**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JAMES R. DOCKERY and LAURA D. DOCKERY, | ) |
| | ) |
| | ) CASE NO.: 25-929 |
| Plaintiffs, | ) |
| v. | ) |
| | ) JURY DEMAND ) |
| AMERICAN ECONOMY INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | |

## COMPLAINT

Plaintiffs, James R. Dockery and Laura D. Dockery ("Plaintiffs'), file this *Complaint* against Defendant American Economy Insurance Company ("American") and in support, set forth the following:

### INTRODUCTION

1.    American issued policy Number OF2903042 (the "Policy") to Plaintiffs subject to all terms, conditions, limitations, exclusions and endorsements contained within the Policy for the real property located at 4830 Grassmere Street, Montgomery, Alabama 36116 ("Property"). A copy of the Policy is attached hereto as Exhibit A.

2.    Plaintiffs bring this action against Defendant due to their unreasonable failure to comply with their obligations by refusing, negligently and in bad faith, to cover claims brought by Plaintiffs under the Policy.

3.    On or about February 28, 2024, a water leak occurred at the Property causing damage from a covered cause under the Policy ("Loss").

4.    As a result of the Loss, damage occurred to the flooring.

1

5.      As soon as possible thereafter, Plaintiff notified American of the loss and sought coverage under the Policy.

6.      Defendants assigned claim number 056228771-01 to the Loss ("Claim").

7.      American partially accepted coverage for the Claim and the Loss.

8.      As a result of American's bad faith failure to investigate the claim and to make a coverage determination based on the actual Policy language, what is an otherwise covered, non-excluded cause of loss was ignored, American partially denied the Claim on March 24, 2025.

9.      Plaintiffs performed all conditions precedent necessary to maintain this action.

10.      American breached the contractual terms of the Policy and Plaintiffs have suffered damages.

## JURISDICTION AND VENUE

11.      The loss occurred in Montgomery County, Alabama.

12.       This Court has jurisdiction over the parties because the Property is located in Montgomery County, Alabama.

13.      Further, this Court has personal jurisdiction over American because American issued Plaintiffs an insurance policy that insures property located in Montgomery County, Alabama and because said insurance policy and property are the subject of this lawsuit.

14.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because Plaintiffs' claims exceed seventy-five thousand dollars ($75,000) and complete diversity exists between the parties.

15.      Venue is proper in this Court pursuant to 28 U.S. CODE § 1391 because the Property involved in this action is situated in this district, and Defendants conducted business through their agents in the district.

## PARTIES

16.     Plaintiffs are the owners of Property located at 4830 Grassmere Street, Montgomery, Alabama 36116 and the named insureds on the Policy.

17.     American is a corporation organized and existing under the laws of the State of Indiana and headquartered in Boston, Massachusetts, and with its principal place of business listed at 175 Berkeley Street, Boston, Massachusetts 02116

18.     American was at all times relevant herein lawfully operating as an insurance company duly authorized to issue insurance policies in the State of Alabama, and transacted business within the State of Alabama.

## STATEMENT OF FACTS

### *I.     The Policy*

19.     To protect the Property, Plaintiffs purchased an insurance policy from American.

20.     American issued a policy to Plaintiffs with Policy number OF2903042 ("Policy") with a policy period of June 22, 2023-June 22, 2024.

21.     Plaintiffs paid all premiums due in order for the policy to remain in full force and effect.

22.     The Policy identifies the covered property as the dwelling located at located at 4830 Grassmere Street, Montgomery, Alabama 36116 ("Property").

23.     American issued the Policy to Plaintiffs subject to all terms, conditions, limitations, exclusions and endorsements contained within the Policy for Property.

24.     The Policy was in full force and effect on the date of the loss.

25.     At all relevant times, Plaintiffs complied with all requirements of the Policy, including the payment of premiums.

26.     Under the Policy, American agreed to "cover accidental direct physical loss to property described in Building Property We Cover….." Ex. A at Pg. 4.

## II.     *The Loss*

27.     At all times material hereto, the Policy, among other things, provided insurance coverage for direct physical losses to the Property.

28.     The foregoing Policy was in full force and effect at all material times hereto and during the subject date of loss.

29.     On February 28, 2024, the Property suffered an accidental, sudden water leak.

30.     As a result, direct physical damage to the Property occurred, namely, the Property was damaged by water to the flooring and other items in the home.

## III.     *The Claim*

31.     On February 29, 2024, Plaintiffs timely informed American of the damages that the Property incurred.

32.     In response to Plaintiffs' reported Claim, American acknowledged the Loss and assigned an adjuster and the claim number 056228771-01 for the Loss.

33.     In response to Plaintiffs' Claim, American engaged the services of a mitigation company, DEC Construction Company, Inc., to mitigate the water damage.

34.     American inspected the Property by way of its adjuster on October 18, 2024.

35.     American determined the water leak was a covered cause of loss.

36.     Based on the inspection, an estimate afforded coverage for some of the damage from the Loss.

37.     American issued payment for water remediation and for removal/replacement of the baseboards and certain other damaged portions of the Property.

38.    Over the course of several months, Plaintiffs continuously notified American of the issues with the damaged floor.

39.    Mr. James Dobbs, Jr. , P.E., a Senior Consultant from Rimkus Consulting Group, Inc. ("Rimkus"), an engineering and technical consulting firm, inspected the property on December 11, 2024.

40.    The purported scope of that inspection was "to determine the cause of the cracking and discoloration of the paver floor covering and whether any affected pavers can be repaired or replaced."[1]

41.    Mr. Dobbs and Rimkus determined "[t]he isolated locations of cracked pavers within the Dockery residence were not the result of the plumbing leak but were commensurate with differential movements of the concrete slab-on-grade and its supporting soils. Any cracked pavers throughout the residence can be removed and replaced with a like paver of similar size and color as these pavers remain available from the manufacturer."[2]

42.    This initial report from Mr. Dobbs and Rimkus was issued on January 9, 2025.

43.    Plaintiffs disagreed with this conclusion.

44.    Plaintiffs were also informed by a contractor and flooring specialist that there is no differential movement noted with the concrete slab-on-grade and its supporting soil, refuting the conclusion from Mr. Dobbs and Rimkus.

45.    Plaintiffs notified American of the disagreement and conclusion of the contractor and flooring specialist.

46.    As a result, Mr. Dobbs and Rimkus re-inspected the Property on February 18, 2025.

---

[1] Rimkus Report at p. 1.

[2] *Id.* at p. 2.

47.    The supplemental report from the second inspection was issued by Mr. Dobbs and Rimkus on March 6, 2025.

48.    The March 6, 2025 report restates prior conclusions and adds that "[t]he isolated, hollow-sounding pavers located throughout the residence were not due to the reported refrigerator leak but were **commensurate** with the deficient installation of the floor covering which caused incomplete adherence/coverage of the mortar below."

49.    Mr. Dobbs and Rimkus reached this assumption without any testing.

50.    Notably, the March 6, 2025 report does not **determine** the cause of the hollow-sounding tiles.

51.    The March 6, 2025 report simply indicates the sounding is "**commensurate with** deficient installation.**"**

52.    On March 24, 2025, American issued a partial coverage denial citing that "replacement of the flooring, including the need to remove/reset/replace cabinets, countertops, and backsplashes, is not warranted."

53.    The partial denial of damage to the flooring was because the "flooring was found to be damaged by differential movements of the concrete slab-on-grade and its supporting soils."[3]

54.    The partial denial also concluded that any "hollow-sounding pavers are due to deficient installation of the floor covering. These damages are specifically excluded in your policy and no coverage is afforded for these damages."[4]

---

[3] Partial Denial Letter at p. 1.

[4] *Id.* at pp. 1 and 2.

55.    As noted above, however, the March 6, 2025 report did not determine that the flooring damage "was **_due to deficient installation_** of the floor covering" but that hollow sounding tiles can be "**_commensurate with_** deficient installation."

56.    In other words, American, through Mr. Dobbs and Rimkus, failed to properly investigate the claim in bad faith, instead searching for a reason to deny the claim rather than determine a cause.

57.    Plaintiffs identified no hollow-sounding tiles prior to the water leak.

58.    Plaintiffs identified no grout issues prior to the water leak.

59.    After the water leak, both hollow-sounding tiles and crumbling grout were identified for the first time.

60.    American, Mr. Dobbs, and Rimkus were aware of the absence of both prior to the water leak.

61.    Mr. Dobbs and Rimkus performed zero tests to determine the cause and performed a perfunctory walk-through of the Property.

62.    Mr. Dobbs and Rimkus' inspection was entirely inadequate to determine the cause of the loose and damaged tiles and grout.

63.    Mr. Dobbs and Rimkus did not eliminate the water leak as the true cause of Loss.

64.    Mr. Dobbs and Rimkus failed to determine the true cause of the Loss.

65.    Mr. Dobbs and Rimkus instead jumped to a faulty conclusion that would permit denial of the claim by American.

66.    Upon information and belief, Mr. Dobbs and Rimkus did so in bad faith and as part of a pattern and practice at the direction of American to always seek reasons for denial rather than to actual determine a cause of loss.

67.    Upon information and belief, Rimkus is known in the industry to be defense-friendly, and to always side against coverage when hired by an insurance carrier, like American.

68.    The partial denial cites to Policy exclusions for wear and tear, marring, scratching, deterioration; inherent defect, mechanical breakdown; smog, rust or other corrosion, or electrolysis; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys; birds, vermin, rodents, insects or domestic animals, except for breakage of glass; pressure from or presence of plant roots.

69.    The exclusions in paragraph 51 do not prevent coverage for "any resulting loss" from those causes.

70.    The partial denial also cites to Policy exclusions for Earth Movement, and the accompanying definition.

71.    Finally, the partial denial letter includes exclusions for "Planning, Construction, or Maintenance, meaning faulty, inadequate or defective:

   a.  Planning, zoning, development, surveying, siting;
   b.  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c.  Materials used in repair, construction, renovation or remodeling; or
   d.  Maintenance;

   Of property whether on or off the insured location by any person or organization. However, any ensuing loss not excluded is covered."

72.    Other noted exclusions include the exception to exclusion for water damages that includes tear out and replacing any part necessary to repair the system or appliance from whence the water escaped.

73.    And the exclusion for pollution or contamination are also quoted.

74.    On August 1, 2025, American again stood by its partial denial on the basis that the pavers were not damaged due to water leak but due to differential movement.

75.    Plaintiffs, at their own expense, retained Goodwyn Mills to core the concrete slab and to hand auger a location along the exterior to the slab to test the slab and the soil for movement.

76.    The cost to Plaintiffs to perform this testing was $3,900 that Plaintiffs paid.

77.    Goodwyn Mills measured the slab to be 12 inches thick.

78.    According to the International Residential Code, the minimum thickness of a residential slab is 4 inches.

79.    Plaintiffs' Property is three times as thick as that required by code.

80.    A thicker slab spreads the weight of the construction over a larger area, reducing the likelihood and risk of differential movement and cracking.

81.    The report from Goodwyn Mills concluded the soils "are above the plastic limit (PL), which indicates a lower potential for swelling of the underlying soils. In addition, there was no observed cracking in the interior sheetrock, exterior brick or façade, or standing water beneath the slab."[5]

82.    If the slab/soil was an issue, there would be interior sheetrock cracking or exterior brick or façade cracking or standing water beneath the slab.

83.    None of these existed.

84.    The absence of these demonstrates the inaccuracy of Mr. Dobbs' and Rimkus' determination.

85.    In particular, the initial report upon which the partial denial was based assumed, without testing, that differential settling caused the damage to the flooring.

---

[5] Goodwyn Mills Cawood Report dated October 21, 2025 a p. 2.

86. Actual testing performed by Goodwyn Mills demonstrates that falsity.

87. Instead, and after actual testing, Goodwyn Mills determined "that the loose and dislodged tiles are likely a result of the water leak and not movement of the subsurface soils and slab."[6]

88. Plaintiffs provided the Report, dated October 21, 2025, to American and requested reconsideration of the partial denial and notified American that they dispute the coverage determination.

89. American confirmed receipt of the Email and Report on October 23, 2025.

90. The Adjuster, Juan Marin, asked management to reopen the claim and advised once the new adjuster was assigned, Plaintiffs would be contacted.

91. Plaintiffs followed up multiple times regarding the new adjuster.

92. On November 12, 2025, American notified Plaintiffs that the Claim had been reviewed along with the engineer's report and based on the evidence available, American's coverage determination would stand.

93. There was no further cause determination or analysis included.

94. American's failure to assess the Claim under the plain language of the Policy and its denial disregarding the Policy language was in bad faith—there was no reasonable basis to deny the Claim because the only Engineer to actually determine the cause (as opposed to assume a cause commensurate with identified damage) concluded the water caused the damage.

95. As a result, Plaintiffs have been forced to file this lawsuit to correct the bad faith denial of American.

### IV.   Damages

---

[6] *Id.*

96.    As a result of the Loss, Plaintiffs suffered the loss of property damage, remediation costs, and other damages as will be determined by the jury.

97.    Plaintiffs have been informed and therefore believe and allege that because of the nature of the concrete pavers, the pavers cannot be removed and replaced without damaging the surrounding tiles.

98.    As a result, in order to repair the damage from the covered water loss, all flooring may need to be removed.

99.    The flooring is continuous under the kitchen cabinets and island.

100.    In order to replace the flooring, the kitchen cabinets and island will need to be removed and reset.

101.    It is unknown whether the cabinets and island can be removed without causing significant damage, necessitating those items also needing to be replaced.

102.    The current estimate, without consideration of replacement (allowing for resetting of these cabinets) exceeds $200,000.00.

103.    In addition, Plaintiffs anticipate more than 50% of their home will be non-functional and unusable, including the kitchen.

104.    These necessary repairs may, therefore, include loss of use and additional living expenses.

105.    As a result of American's actions, Plaintiffs have not been provided the insurance benefits pursuant to the Policy and coverage that it purchased and that was promised by American.

106.    These losses have continued through the date of the filing of this action.

107.    At all times material hereto, Plaintiffs have depended on American to advise them as to insurance matters because of their superior knowledge and position.

108.    American entered into a pattern and practice of bad faith, which included the bad faith practiced on Plaintiffs.

109.    Plaintiffs bring this action against American because of actions arising from American's unreasonable failure to comply with their obligations to Plaintiffs by refusing, negligently and in bad faith, to investigate and cover the Claim brought by Plaintiffs under their Policy.

**CAUSES OF ACTION**
**COUNT I**
**BREACH OF CONTRACT**

110.    Plaintiffs adopt and incorporate into this Count the allegations set forth in ¶¶1-109 as if set out fully herein.

111.    American issued the Policy to Plaintiffs for insurance coverage on the Property.

112.    The Policy was in full force and effect at the time of the Loss.

113.    Plaintiffs have paid all premiums and charges due and performed all obligations and conditions under the Policy.

114.    The Policy provided coverage for loss to the Property from a water leak.

115.    American improperly partially denied the Claim without regard for the actual language in the Policy.

116.    American improperly denied the Claim.

117.    As a direct result of American's material breach of the insurance contract, Plaintiffs were thereby damaged in the form of, including but not limited to, monies owned under the terms of their Policy, costs incurred by paying out of pocket to repair their Property, all incidental and consequential damages and interest.

WHEREFORE, Plaintiffs demand judgment against American in such an amount of compensatory damages, all incidental and consequential damages resulting from the breach, jointly and severally, as a jury deems reasonable, and may award, plus costs.

### COUNT III
### BAD FAITH FAILURE TO PROPERLY INVESTIGATE CLAIMS

118.    Plaintiffs adopt and incorporate into this Count the allegations set forth in ¶¶1-109 as if set out fully herein.

119.    American intentionally and in bad faith, failed to fully investigate Plaintiffs' Claim.

120.    American has a duty to fully and fairly investigate Plaintiffs' Claim under the Policy in good faith.

121.    American breached its duty to Plaintiffs by failing and refusing to fully and properly investigate Plaintiffs' Claims.

122.    Instead, American partially denied Plaintiffs' Claim based upon a statement provided by its agents, Mr. Dobbs and Rimkus, that damages were ***commensurate with*** rather than ***caused by*** something.

123.    American, in bad faith, did not determine the cause of loss and denied the Claim based upon an assumption.

124.    American did this, upon information and belief, because of an internal pattern and practice of encouraging engineers like Mr. Dobbs and Rimkus to seek bases for denial rather than to determine an actual cause that may provide coverage.

125.    As a direct and proximate result of American's failure to properly investigate in good faith Plaintiffs' Claims, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand judgment against American in such an amount of compensatory and punitive damages, all incidental and consequential damages, jointly and severally, as a jury deems reasonable, and may award, plus costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief against Defendants in the form of:

A.    Actual damages in an amount to be determined;

B.    Consequential and incidental damages in an amount to be determined;

C.    Pre and post-judgment interest;

D.    Punitive damages;

E.    Attorneys' fees and costs, including the cost of this litigation;

F.    Any other such additional relief deemed just and proper.

November 21, 2025.

Respectfully Submitted,

Rebecca D. Gilliland (GIL077)
BEASLEY,        ALLEN,        CROW,
METHVIN, PORTIS & MILES,
301 St. Louis St.
Mobile, Alabama 36602
(251) 308-1515
Rebecca.Gilliland@BeasleyAllen.com

C. Gibson Vance (VAN025)
BEASLEY,        ALLEN,        CROW,
METHVIN, PORTIS & MILES,
272 Commerce Street
Montgomery, Alabama 36104
(334) 269-2343
Gibson.Vance@BeasleyAllen.com



**Safeco** Insurance™
A Liberty Mutual Company

ASSUREDPARTNERS  OF  ALABAMA  LLC
5251 HAMPSTEAD  HIGH  ST STE 200
MONTGOMERY      AL   36116-6755

May  14, 2023

Policy  Number:  OF2903042
24-Hour  Claims:  1-866-472-3326
Policy  Service:  1-866-472-3326
Online  Account  Services:  www.safeco.com

**THIS IS NOT A BILL.**

JAMES  R DOCKERY
LAURA  D DOCKERY
4830 GRASSMERE  ST
MONTGOMERY  AL  36116-9200

Thank you for allowing us to continue serving your home insurance needs.   We appreciate your business and the trust that you have placed in us.

This renewal reflects adjustments to your dwelling, other structures, and personal property limits. We have adjusted your dwelling  coverage limit to reflect increases in labor and materials  costs in your area.   As part of your responsibility  to maintain  adequate amounts of insurance, please contact your agent to ensure that your limits  reflect your dwelling's  current features and characteristics,  particularly  if you have remodeled  recently.

Your other structures and personal property limits, which are based on your dwelling  coverage, have also been adjusted.   You should review whether your coverage is adequate at least annually, and after each significant  personal property purchase.   If you would like to change your limits, or schedule any of your high value items, please contact your agent.

With this renewal the following  changes were made, including  those requested by you or your agent or broker:

- Your Dwelling  Limits (Coverage A) changed from $555,500 to $597,800.   Other coverage limits listed below also changed since they are factors of your dwelling  limits.
- Your Other Structure Limits  (Coverage B) changed from $55,550 to $59,780.
- Your Personal Property Limits  (Coverage C) changed from $277,750 to $298,900.
- Your Additional  Living Expense (Coverage D) changed from $111,100 to $119,560.

We would also like to draw your attention to the following:

- Your new policy period begins June 22, 2023.   The 12-month premium for this policy is ████████ for the June 22, 2023 to June 22, 2024 policy term.

- This is not a bill.   Your bill will be sent in a separate mailing approximately  25 days before it is due.   It will provide an explanation of any money owed, your payment options with applicable  fees and your payment due date.

PLEASE  SEE REVERSE
**AMERICAN  ECONOMY  INSURANCE  COMPANY (A SAFECO Company)**
P O BOX 704000, SALT  LAKE CITY, UT 84170

OC-429/EP  10/13

Your renewal premium is $2,940.00.   We have sent a bill for this amount to your mortgage servicing company.

If you have any questions or wish to make any changes to your policy, you can do so by calling us at 1-866-472-3326.

We appreciate the opportunity to serve you.   Thank you.

Tyler Asher
President, Safeco Insurance

OC-430/EP 5/98
G1

## IMPORTANT NOTICE —   PLEASE REVIEW CAREFULLY
### Important Changes to Your Homeowners Policy

Thank you for renewing your homeowners insurance with Safeco. We appreciate your business and the trust you have placed in us. We take our responsibility to our customer seriously, and part of that responsibility is keeping you informed at all times.

**What you need to know**

A new trend is growing in popularity with the general public and providing an option for increasing economic gain through rental of a home by its owner. Accommodations can range from the host simply offering a guest a bed for the night, with use of other household areas, to renting the entire house for a week. This is known as "Home Sharing"Online hosting networks, such as Air BNB, VRBO, and others offer services connecting online registered hosts with registered guests.

At Safeco, our commitment to you, is to provide best in class products, choice of the protection that makes most sense to your individual situation and keeping the cost of your coverage at a competitive price. To keep with that commitment, policy updates are needed as market trends, such as Home Sharing, arise.

It is important you understand your homeowners coverage in relation to the Home Sharing activity. While your dwelling structure is always covered when it is your primary residence, some coverages are impacted.

**How your Policy has changed**

With this renewal, your homeowners policy is updated to specifically name "Home Sharing"activities as not covered. These changes include:

- Your policy is updated to define Home Sharing through the use of the term short-term rental.

- The business definition in your policy is updated to recognize a short-term rental as a business.

- Because business use of other structures (garage, guest house, etc.) is not permitted and a short-term rental is considered a business, there is no coverage for those structures while used as a short-term rental.

- Theft or vandalism to your dwelling or other structures is not covered while rented to others as a short-term rental.

- Coverage for personal property owned by tenants or guest cannot be requested when part of a short-term rental.

- Personal property located in an area being used as part of a short-term rental is not covered.

- Damage to your personal property by vandalism, malicious mischief, and theft of personal property is specifically excluded when loss occurs as part of a short-term rental.

- Loss of rent under Coverage D is not covered during use of premises as a short-term rental.

- Liability coverage is now restricted with regard to short-term rental activities.

- Property damage you may cause to another's property is not covered when part of a short-term rental.

**Additional Policy Changes**

- Your policy was also modified to provide Coverage C —  Personal Property up to $3,000 and up to the limit shown in your Declarations page for Coverage E —  Personal Liability and Coverage F —  Medical Payments to Others for electric bikes, scooters, hoverboards, or other similar electric or battery powered vehicles designed, manufactured, and/or altered to be operated for speeds up to 28 miles per hour.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

**New optional Home Sharing endorsement is available**

We are pleased to offer a new optional coverage endorsement to provide protection for Home Sharing. **Home Sharing Coverage** extends coverage for Home Sharing activities. Coverage includes:

- Coverage for theft or vandalism and malicious mischief in, to, or from a dwelling or other structure while rented to others. This coverage is extended to personal property as well.

- Coverage for your other structures and personal property while you are offering your home as a short-term rental.

- Loss of rent coverage under Coverage D, including $10,000 in protection for reservations cancelled due to a covered loss.

- Coverage for your legal liability exposure when it occurs as a result of a short-term rental.

**Reviewing your coverage**

Enclosed you will find an updated copy of the Special Provisions endorsement that applies to your policy. It includes the changes described above and it is important you review and understand these changes. Please keep this new Special Provisions with your policy.

**We're Here to Help**

If you would like more information on this change, are interested in adding the new Home Sharing optional endorsement to your policy, or have any other questions about your policy, please contact your independent Safeco agent or broker listed on the Policy Declarations.

***The above summary is for information purposes only and does not provide coverage. Your policy forms, along with the Policy Declarations, provide complete details of your coverage. If the above summary conflicts with the applicable policy language, the policy language prevails.***

# Ask yourself: Do you have enough insurance coverage?

### How much would it take to reconstruct your home?

Surprisingly, it has been estimated that 58% of American homes are underinsured by an average of 21%*. Make sure yours isn't one of them.

Each home is unique. You know your home best. It's your responsibility to make sure you're "fully insured" and "insured to value." That means you need to have enough insurance coverage to rebuild your home and replace all of your personal belongings in the event of total loss.

**How can you determine your needs? Ask yourself the questions below. If you need help answering them, call your agent and discuss your insurance needs with them.**

They will assist you in determining how much insurance would be needed to fully protect your home and belongings.

### How much would it take to reconstruct your home at today's prices?
Things to consider:
- Your home's age (older homes tend to be more expensive to reconstruct) and style (contemporary, colonial, ranch, etc.)
- Features —  fireplaces, cabinetry, built-in features, vaulted ceilings
- Flooring —  hardwood, tile, natural stone, carpeting
- Finishes —  crown molding, window and floor trim, faux paint, wall paper, wainscoting, chair rails, staircases, etc.
- Recent improvements you may have made (remodeled bathroom or kitchen, recessed lighting, built-in cabinets)
- A basement you may have finished or a room you may have added

### How much is enough to replace the structures surrounding your home at today's prices?
Things to consider:
- Your fence, detached garage, gazebo, barn or storage shed
- If you have an in-ground swimming pool or just repaved your driveway or sidewalk

### What would it take to replace your personal belongings at today's prices?
Things to consider:
- All your basics (furniture, rugs, linens, kitchenware, tools) and every electronic gadget
- Your entire wardrobe, your jewelry, medicines and personal effects
- Have you made any big purchases lately?
- If you have a garage full of tools, are passionate about the latest gadgets or collect just about anything, you should seriously consider getting more personal belongings coverage than the standard policy provides.

*Copyright 2008 Marshall & Swift / Boeckh, LLC and its licensors. All rights reserved. Used with permission.

# Let's make sure you're "fully insured."

Your agent uses replacement cost estimation tools to establish a starting point for your insurance coverage. But you know your home best. And we look to you to give your agent the most complete, up-to-date information in order to protect your home and lifestyle. Here are two quick things you can do today:

1. **Look critically at your coverage statement page (also known as the policy declarations page, which comes after the opening letter in this package).** Do you believe you have enough Coverage A? (This is the amount you'd get for reconstruction of an as-close-as-possible replica of your home in the event of total loss.) If you're not sure, call your agent for help.

2. **Take inventory.** Compare the value of your personal belongings to the Coverage C amount on your coverage statement page.

**It's important to know: your home's market value is totally different from what it would cost to reconstruct.** Today's market value reflects economic conditions, taxes, school districts, the market value of land and many other factors that have nothing to do with how much it would cost to reconstruct your home from scratch.

Reconstruction cost — the amount needed to get you back home quickly — is based almost exclusively on the cost of materials and labor as well as demand for contractor services. In the event of total loss, a properly insured Safeco policyholder can rebuild with the same quality of materials and workmanship in their current home (unless a functional replacement cost policy was deliberately selected). Of course, we hope you'll never need these services. But we'll all sleep better knowing you're fully insured.

Thank you for trusting Safeco with your home insurance needs.

# RESIDENTIAL PROPERTY INSURANCE

## OUTLINE OF COVERAGE AND COMPREHENSIVE POLICY CHECKLIST

The following is an outline of coverage and comprehensive policy checklist of your insurance policy and is for informational purposes only. Alabama law prohibits this checklist from changing any provisions of the insurance contract which is the subject of this checklist. Any endorsement regarding changes in types of coverage, exclusions, limitations, reductions, deductibles, coinsurance, renewal provisions, cancellation provisions, surcharges, or credits is not included in this checklist, unless otherwise indicated. This checklist does not operate to expand coverage beyond the coverage provided in the policy. If there is a contradiction between this checklist and the policy, the terms of the policy govern.

Policyholders should read their policy thoroughly. Policyholders should review their insurance policy annually with their insurance producer to ensure they are adequately covered.

If you have questions regarding your policy, please contact your agent or insurance company.

---

# OUTLINE OF COVERAGE

## Policy Type: Homeowners

---

## Dwelling Coverage
### (Coverage A)

Limit of Insurance:  $ 597,800

Loss Settlement Basis:  Replacement Cost

---

## Other Structures (Detached from Dwelling)
### (Coverage B)

Limit of Insurance:  $  59,780

Loss Settlement Basis:  Replacement Cost

---

## Personal Property (Contents)
### (Coverage C)

Limit of Insurance:  $ 298,900

Loss Settlement Basis:  Replacement Cost

---

## Roof Repair/Replacement

Loss Settlement Basis:
Replacement Cost

---

## Policy Definitions:

The following can be found in the Policy Definitions section of your policy. *"Replacement cost"* or *"Actual cash value"* are **not** the Market Value or Mortgage Value of your home.

**"Replacement cost"**

**(1)** In case of loss or damage to buildings, **replacement cost** means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

**(2)** In case of loss to personal property, **replacement cost** means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, **replacement cost** shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

**"Actual cash value"**

**(1)** When damage to property is economically repairable, **actual cash value** shall mean the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

**(2)** When damage to property is not economically repairable or loss prevents repair, **actual cash value** shall mean the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

**(3)** Otherwise, **actual cash value** shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

**(4)** **Actual cash value** shall not include taxes or any expenses unless incurred following the loss.

---

### Deductibles

Hurricane/Named Storm Deductible:  Not Applicable

Windstorm or Hail Deductible:  Not Applicable

Other Property Perils Deductible:  $   1,000

---

# PERILS COVERED BY YOUR POLICY

### Residence and Other Structure Coverage
### Personal Property/Contents Coverage

Items marked with a **Y (Yes)** indicate coverage **is** included in your policy; those perils marked with an **N (No)** indicate coverage **is not** included. **Special limits and loss settlement exceptions may apply to certain limits. Refer to your policy for details. If there is a contradiction between this checklist and your policy, the terms of the policy govern.**

| Coverage | Peril |
|---|---|
| Y | Fire |
| Y | Lightning |
| Y | Explosion |
| Y | Wind and Hail |
| N | Flood |
| N | Earthquake |
| Y | Collapse |
| Y | Mold |
| Y | Theft |

# OTHER COVERAGES IN YOUR POLICY

Special limits and loss settlement exceptions may apply to certain limits. Refer to your policy for details. If there is a contradiction between this checklist and your policy, the terms of the policy govern.

| Coverage | Peril | Limit of Insurance | Time Limit |
|---|---|---|---|
| Y | Debris Removal | Additional 5% of the limit of liability applicable to the damaged property | N/A |
| Y | Loss Assessment | $   500 | N/A |
| Y | Additional Living Expense and Loss of Rent | N/A | Shortest Time Required |
| Y | Personal Liability Coverage | $ 500,000 | N/A |
| Y | Medical Payments Coverage | $   5,000 | N/A |
| Y | Building Ordinance or Law | $ 59,780 | N/A |

# SOME EXCLUSIONS, LIMITATIONS, AND/OR REDUCTIONS IN COVERAGE

(Other Exclusions, Limitations and/or Reductions in coverage may apply)

- Removal of fallen trees is excluded unless they damage building property we cover.
- Limitations exist on coverage amounts for jewelry, silverware, cash, coins, certain types of collections, and art.
- Property and Liability Coverage for automobiles, watercraft, and/or aircraft is limited or excluded.
- Dwelling or Other Structures claims of $2,500 or more are settled on an actual cash value basis until you repair or replace the property.
- Personal Property claims are settled on an actual cash value basis, unless Personal Property Replacement Cost is purchased and you have repaired or replaced the property.
- Losses to insured property intentionally caused by an insured are excluded.
- Losses due to neglect are excluded.
- Losses to building property caused by water or sewage from off the residence premises are excluded.
- Losses to building property caused by water or sewage on the residence premises are excluded unless caused by a malfunction or obstruction on the residence premises of a drain or plumbing appliance located on the residence premises.

# SOME DISCOUNTS AVAILABLE TO REDUCE YOUR POLICY PREMIUM

Y (Yes) or N (No) indicates whether you currently receive these discounts. Ask your agent or insurance company about other discounts for which you may be eligible.

| | |
|---|---|
| N | Multiple qualifying policies with the same insurer |
| N | Fire/Smoke/Burglar Alarm/Sprinkler |
| N | Wind Mitigation Features |



## Consumer Privacy Statement

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information") and we value you as a customer.

To learn more about how Safeco collects and uses your personal information, please read the following notice.

### Safeco's sources of information about you

We collect personal information about you from different sources, including:

- The information you provide on applications or other forms (such as your name, address and Social Security number);
- Your transactions with us, our affiliates or others (such as your payment history and claims information);
- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record or claims history); and
- Your independent insurance producer (such as updated information pertaining to your account).

### Safeco's use of your personal information

We only disclose personal information about our customers and former customers as permitted by law. Generally, this includes sharing it with third parties to administer your transactions with us, service your insurance policy or claim, detect and prevent fraud, or with your authorization. These third parties may include independent insurance producers authorized to sell Safeco insurance products, independent contractors (such as automobile repair facilities and property inspectors), independent claims representatives, insurance support organizations, other insurers, auditors, attorneys, courts and government agencies. We may also disclose your personal information to other financial institutions with whom we have joint marketing agreements. When we disclose your information to these individuals or organizations, we require them to use it only for the reasons we gave it to them.

We may also share information about our transactions (such as payment history and products purchased) and experiences with you (such as claims made) within our Safeco family of companies.

Safeco does not sell your personal information to others and we do not provide your information to third parties for their own marketing purposes.

### Independent Safeco Insurance Agents

The independent insurance agents authorized to sell Safeco products are not Safeco employees and not subject to Safeco's Privacy Policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco distributor to learn more about their privacy practices.

### Information about Safeco's web site

If you have internet access and want more information about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

## Protecting your personal information from unauthorized access

We maintain physical, electronic and procedural safeguards to protect your personal information. Our employees are authorized to access customer information only for legitimate business purposes.

## State Privacy Laws

This privacy statement may be supplemented by privacy laws in your state. We will protect your information in accordance with state law.

## This Privacy Statement applies to the following members of the Safeco family of companies:

**American Economy Insurance Company**
**American States Insurance Company**
**American States Insurance Company of Texas**
**American States Lloyds Insurance Company**
**American States Preferred Insurance Company**
**First National Insurance Company of America**
**General Insurance Company of America**
**Insurance Company of Illinois**
**Liberty County Mutual Insurance Company**
**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco Insurance Company of Indiana**
**Safeco Insurance Company of Oregon**
**Safeco Lloyds Insurance Company**
**Safeco National Insurance Company**
**Safeco Surplus Lines Insurance Company**

© 2011 Safeco Insurance Company of America, Member of Liberty Mutual Group. All Rights Reserved.

## Information about your Policy

Policy Number: OF2903042

JAMES R DOCKERY
LAURA D DOCKERY
4830 GRASSMERE ST
MONTGOMERY AL  36116-9200

Like many insurance companies, Safeco Insurance considers many factors, including information based on your credit history, to determine your premium. You have the option to request that we re-evaluate your insurance policy using current credit information. If you request that we update your credit information, it may result in a quoted premium either higher or lower than your current premium. To submit a request, return this form to Safeco Insurance, Attn: Policy Support, P.O. Box 704000, Salt Lake City, UT 84170-4000 or fax it to (877) 344-5107. You may submit a request once every 12 months or as otherwise permitted by law. Any changes will be applied at your next renewal.

By returning this form, you request Safeco Insurance to re-evaluate your policy based on your current credit information.

CN-7402/EP 8/15
G2

**Safeco Insurance** ™
A Liberty Mutual Company

## AMERICAN  ECONOMY  INSURANCE  COMPANY  (A SAFECO Company)
Administrative  office:  175 Berkeley  St.,  Boston,  MA  02116  (A stock insurance  company.)

### HOMEOWNERS  POLICY  DECLARATIONS

**POLICY NUMBER:**
OF2903042

**POLICY PERIOD:  FROM:** JUNE 22, 2023 12:01 A.M.
**TO:** JUNE 22, 2024 12:01 A.M.

**NAMED INSURED  AND MAILING  ADDRESS:**
JAMES  R DOCKERY
LAURA  D DOCKERY
4830 GRASSMERE  ST
MONTGOMERY  AL  36116-9200

**AGENT:**
ASSUREDPARTNERS  OF ALABAMA  LLC
5251 HAMPSTEAD  HIGH ST STE 200
MONTGOMERY       AL   36116-6755

**Valued Homeowners  Customer  Since: JUNE 22, 2021**

**INSURED  LOCATION:**
Same

**POLICY SERVICE INFORMATION:**
**TELEPHONE:**  1-866-472-3306
**E-MAIL:**
**WEBSITE:** www.safeco.com

| IMPORTANT MESSAGES |
|---|

- Your policy has renewed effective June 22, 2023.

**LIMITS OF LIABILITY**
(Policy Section I - Property Coverages and Section II - Liability Coverages)

| Coverage A — Dwelling | Coverage B — Other Structures | Coverage C — Personal Property | Coverage D — Additional Living Expense | Coverage E — Personal Liability | Coverage F — Medical Payments |
|---|---|---|---|---|---|
| $597,800 | $59,780 | $298,900 | $119,560 | $500,000 | $5,000 |

**DEDUCTIBLES.**
The following deductibles apply unless otherwise stated within the policy.

AMOUNT
Section I - Property Coverages                    $ ▮▮▮▮

| PREMIUM SUMMARY | | PREMIUM |
|---|---|---|
| WINDSTORM/HAIL | $ | ▮▮▮ |
| HURRICANE | $ | ▮▮▮▮ |
| ALL OTHER PERIL | $ | ▮▮▮▮ |
| OTHER AND OPTIONAL COVERAGES | $ | ▮▮ |
| DISCOUNTS AND SURCHARGES | You Saved ▮▮▮▮ | Included |

| TOTAL POLICY PREMIUM: | $ ▮▮▮▮ |
|---|---|

**Premium Payer:**   Servicing Mortgagee

You may pay your premium in full or in installments. There is no installment fee for
the following billing plans: Full Pay. Installment fees for all other billing plans
are listed below. If more than one policy is billed on the installment bill, only
the highest fee is charged. The fee is:
  $2.00 per installment for recurring automatic deduction (EFT)
  $5.00 per installment for recurring credit card or debit card
  $3.75 per installment for all other payment methods

## AMERICAN ECONOMY INSURANCE COMPANY (A SAFECO Company)
## HOMEOWNERS POLICY DECLARATIONS

CONTINUED

**POLICY NUMBER:** OF2903042

Servicing Mortgagee
   JP MORGAN CHASE BANK NA
   ITS SUCCESSORS AND/OR ASSIGNS
   PO BOX 47020
   ATLANTA GA  30362
   LOAN NUMBER:  000007474818

**ROOF LOSS SETTLEMENT**

| SETTLEMENT TYPE | YR OF INSTALLATION | SURFACING MATERIAL | LOSS PERCENTAGE |
|---|---|---|---|
| Replacement Cost | 2016 | ASPHALT | 100.00% |

REPLACEMENT COST EXPIRATION DATE:  June 22, 2037.

**POLICY LIMITS AND OTHER ADDITIONAL COVERAGES**
(Unless otherwise stated, all limits and coverages are included in basic coverages)
   **COVERAGE LEVEL: ESSENTIAL**
SECTION I - PROPERTY COVERAGES
COVERAGE C - PERSONAL PROPERTY - 3. SPECIAL LIMITS OF LIABILITY
```
a.Money, pre-paid cards...      $    250   h.Business Property
b.Rare coins and currency...    $    500       On Premises...           $  3,000
c.Securities, debit cards...    $    500       Off Premises Sub-limit   $  1,000
d.Watercraft...                 $  3,000   i.Tapes, records, discs...   $    500
e.Trailers...                   $  3,000   j.Theft of rugs...           $  5,000
f.Theft of jewelry, watches...  $    500   k.Grave Markers...           $    500
g.Theft of silverware...        $    500
```

| OTHER INCLUDED COVERAGES/POLICY PROVISIONS | | Limit | Premium |
|---|---|---|---|
| Loss Assessment Coverage | $ | 500 | Included |
| Building Ordinance or Law Coverage ( 10%) | $ | 59,780 | Included |
| Fungi, Wet or Dry Rot, or Bacteria | $ | 5,000 | Included |
| Reasonable Repairs | $ | 5,000 | Included |
| Fire Department Service Charge | $ | 500 | Included |
| Land Stabilization | $ | 5,000 | Included |
| Arson Reward | $ | 25,000 | Included |
| Criminal Conviction Reward - Item a. Information | $ | 2,500 | Included |
| Criminal Conviction Reward - Item b. Property Recovery | $ | 5,000 | Included |
| Credit Card, Fund Transfer, Forgery & Counterfeit Money | $ | 500 | Included |
| Volunteer America | | | Included |
|    Section I (All Perils Coverage) | | | Included |
|    Section II - Liability Coverage | | | Included |
|    Section II - Property Damage | $ | 2,000 | Included |

| OPTIONAL COVERAGES | Limit | | Premium |
|---|---|---|---|
|    Personal Property Replacement Cost | | | Included |
|    Extended Dwelling Coverage | Up to 25% | | Included |
|    Personal Offense Coverage | $ 500,000 | $ | 13.00 |
|    Escape of Water from Sump (Building/Contents) | $ 10,000 | | Included |
|    Replacement Cost on Roof Surfacing (Wind or Hail) | | | Included |
|    Identity Recovery Coverage | $ 25,000 | $ | 12.00 |

| DISCOUNTS AND SURCHARGES | Premium |
|---|---|
|    Newer System Discount | Included |
|    Claim Free Discount | Included |
|    Paid In Full Discount | Included |
|    Advance Quote Discount | Included |

HOM-7001/EP  1/09                            DATE PREPARED MAY  14 2023

# AMERICAN ECONOMY INSURANCE COMPANY (A SAFECO Company)
## HOMEOWNERS POLICY DECLARATIONS

CONTINUED                    **POLICY NUMBER:**   OF2903042

For information on other deductibles, coverages or discounts available in your state
or to review your account online, log on to www.safeco.com

---

**FORMS APPLICABLE TO THIS POLICY:**

```
HOM-7301/EP 1/09    - PERSONAL PROPERTY REPLACEMENT COST
HOM-7311/EP 1/09    - ESCAPE OF WATER FROM SUMP/SUMP PUMP DRAIN (BLDG AND CONT)
HOM-7307/EP 1/09    - IDENTITY RECOVERY COVERAGE
HOM-7232/EP 1/09    - EXECUTION CLAUSE
HOM-7030/EP 11/19   - SAFECO HOMEOWNERS POLICY
HOM-7300/EP 11/19   - EXTENDED DWELLING COVERAGE
HOM-7350/EP 11/14   - PERSONAL OFFENSE COVERAGE
HOM-7130/ALEP 9/22  - SPECIAL PROVISIONS - ALABAMA
HOM-7336/EP 11/19   - REPLACEMENT COST ON ROOF SURFACING FOR WINDSTORM OR HAIL LOS
```

**** REPRINTED FROM THE ARCHIVE.  THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS. ****

# SPECIAL PROVISIONS —  ALABAMA

## POLICY DEFINITIONS

Item **3.a.** is deleted and replaced by the following:

**a.** *"Actual cash value"*

**(1)** When damage to property is economically repairable, *actual cash value* means the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration, and obsolescence.

**(2)** When damage to property is not economically repairable or loss prevents repair, *actual cash value* means the market value of new, identical, or nearly identical property, less reasonable deduction for wear and tear, deterioration, and obsolescence.

**(3)** Otherwise, *actual cash value* means the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

Item **3.c.** is deleted and replaced by the following:

**c.** "*Business*" means:

**(1)** a trade, profession, or occupation engaged in on a full-time, part-time, or occasional basis;

**(2)** any other activity engaged in for money or other compensation, except the following:

**(a)** one or more activities, not described in **(b)** below, for which no *insured* receives more than $5,000 in total compensation for the 12 months before the beginning of the policy period; or

**(b)** *volunteer* activities for which no money or other compensation is received other than for expenses incurred to perform the activity; or

**(3)** a *short-term rental*.

The following is added to existing **POLICY DEFINITIONS,** item **3.**:

**a.** "*Short-term rental*" means one or more rentals, in whole or in part, of the *residence premises* solely for use as a private residence. *Short-term rental* includes any other related property or services made available and/or provided by an *insured*.

*Short-term rental* does not include:

**(1)** rental, in whole or in part, of the *residence premises* for a single rental period to the same individual(s) for more than 180 consecutive days;

**(2)** rental, in part, of the *residence premises* to a tenant, roomer, or boarder for a period of 6 months or more; or

**(3)** property or services provided by another party.

## SECTION I —  PROPERTY COVERAGES

### BUILDING PROPERTY LOSSES WE DO NOT COVER

The following are added to existing **BUILDING PROPERTY LOSSES WE DO NOT COVER**:

**21.** Theft or vandalism and malicious mischief in, to, or from a dwelling or other structure while rented to others by any *insured*, in whole or in part, as a *short-term rental*.

**22.** **Cosmetic loss or damage**, meaning any loss that is limited to the physical appearance of a metal roof surface.

Metal roof means all metal roofing materials on a metal roofing system. For purposes of this exclusion, metal roof does not include the coverings of bay or bow windows. This exclusion does not apply when the roof overlay is a material other than metal.

This exclusion does not apply to policies endorsed with **HOM-7220**, **Optimum™ Homeowners Coverage**.

## PERSONAL PROPERTY WE COVER

### COVERAGE C — PERSONAL PROPERTY

The following is added to item **2.**:

However, we will not cover personal property owned by tenants or guests if the tenants or guests have compensated the **insured** to use the **residence premises**, in whole or in part.

## PERSONAL PROPERTY WE DO NOT COVER

Under **3.**, items **c.** and **d.** are deleted and replaced by the following:

**c.** up to $500 for disassembled parts of a motorized land vehicle while located on the **residence premises**;

**d.** up to $500 for electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

Under **3.**, the following is added:

**e.** up to $3,000 for electric bikes, scooters, hoverboards, or other similar electric or battery powered vehicles designed, manufactured, and/or altered to be operated for speeds up to 28 miles per hour.

Item **8.** is deleted and replaced by the following:

**8.** Property in a location on the **residence premises** when the location is rented to others by any **insured**.

## PERSONAL PROPERTY LOSSES WE COVER

Under **8. Vandalism or malicious mischief**, the following is added:

This peril does not include loss to property caused by vandalism or malicious mischief that arises out of a **short-term rental**.

Under **9. Theft**, items **b.** and **c.** are deleted and replaced by the following:

**b.** in, to, or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

**c.** from that part of a **residence premises** rented by any **insured** to other than an **insured**; or

Under **9. Theft**, the following is added:

**d.** from any part of the **residence premises** by any person using the premises as part of a **short-term rental**.

### COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT

The second paragraph of item **1.** is deleted and replaced by the following:

Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

Items **2.a.** and **2.b.** are deleted and replaced by the following:

**a.** the **residence premises** or that part of the **insured location** that is not rented or leased to a tenant at the time of the loss;

**b.** to any increase in rent or lease payment that occurs after the time of the loss; or

The following is added to item **2.**:

**c.** a **short-term rental**.

The last paragraph of item **2.** is deleted and replaced by the following:

Payment shall be for the shortest time required to repair or replace the damage.

**ADDITIONAL PROPERTY COVERAGES**

The following is added to existing **ADDITIONAL PROPERTY COVERAGES**:

1. **Mortgage Acquisition Expense Coverage.** In the event of a total loss of the dwelling shown in your Policy Declarations by a covered cause of loss, we will pay necessary expenses and fees toward the acquisition of a new first mortgage to repair or replace the insured dwelling, up to a maximum of $5,000.

   No deductible applies to this coverage.

   This is an additional amount of insurance.

## SECTION I —   PROPERTY CONDITIONS

Under **5. Loss Settlement**, item **e.(2)** is deleted and replaced by the following:

   (2)   adverse impact on the acquisition of financing resulting from the covered physical damage to the property. If **Mortgage Acquisition Expense Coverage** is provided under **Additional Property Coverages**, the application of this provision **(2)** does not apply to the extent coverage is provided for **Mortgage Acquisition Expense**.

Item **8.** is deleted and replaced by the following:

8. **Suit Against Us**.

   No legal action can be brought against us unless:

   **a.**   there has been full compliance with all of the terms of this contract; and

   **b.**   the action is brought within the time limitations prescribed under Alabama law.

## SECTION II —   LIABILITY COVERAGES

**LIABILITY LOSSES WE DO NOT COVER**

Item **1.c.(3)** is deleted and replaced by the following:

   (3)   the rental or holding for rental of any part of the *residence premises*:

      (a)   in part, when rented to fewer than three roomers or boarders; or

      (b)   in part, as an office, school, studio, or private garage;

Under **1.f.(2)**, items **(e)** and **(f)** are deleted and replaced by the following:

      (e)   electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour;

      (f)   a motorized land vehicle in dead storage on an *insured location*; or

The following is added **1.f.(2)**:

      (g)   electric bikes, scooters, hoverboards, or other similar electric or battery powered vehicles designed, manufactured, and/or altered to be operated for speeds up to 28 miles per hour.

**ADDITIONAL LIABILITY COVERAGES**

Under **3. Damage to Property of Others**, item **c.** is deleted and replaced by the following:

   **c.**   to property owned by or rented to:

      (1)   any *insured*; or

      (2)   a tenant of any *insured* or a resident in your household; or

## SECTIONS I AND II —   PROPERTY AND LIABILITY CONDITIONS

Item **5.** is deleted and replaced by the following:

5. **Non-Renewal**. We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****

Item **7.** is deleted and replaced by the following:

7. **Our Right to Recover Payment**. An ***insured*** may waive in writing before a loss all rights of recovery against any person. However, this waiver does not apply if an ***insured*** is an innocent victim of domestic abuse as defined in the "Domestic Abuse Insurance Protection Act" In this case, we shall be subrogated to the right of the innocent ***insured*** claimant to recover for any losses we paid for property damages.

   In all other cases, if an ***insured*** has not waived in writing before a loss all rights of recovery against any person, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an ***insured*** must sign and deliver all related papers and cooperate with us.

The following is added to existing **SECTIONS I AND II —    PROPERTY AND LIABILITY CONDITIONS**

1. **Additional Policy Protection.** If one or more of our programs apply to you, you will be eligible to receive benefits specific to that program. The benefits enhance the safety, value, usability, life, or protection of you or your insurable assets. These benefits include, but are not limited to, reduced deductibles, devices, equipment, services, or other benefits provided by either us or a business partner.

All other provisions of this policy apply.



# ALABAMA —   IMPORTANT NOTICE

Thank you for being a Safeco customer.

Alabama law requires us to provide you with the following Notice:

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.



# SAFECO HOMEOWNERS POLICY

## Table of Contents

| | Beginning On Page |
|---|---|
| **INSURING AGREEMENT** | **1** |
| **POLICY DEFINITIONS** | **1** |
| **SECTION I — PROPERTY COVERAGES** | **4** |
| **COVERAGE A — DWELLING** | **4** |
| **COVERAGE B — OTHER STRUCTURES** | **4** |
| Building Property We Cover | 4 |
| Building Property We Do Not Cover | 4 |
| Building Property Losses We Cover | 4 |
| Building Property Losses We Do Not Cover | 4 |
| **COVERAGE C — PERSONAL PROPERTY** | **7** |
| Personal Property We Cover | 7 |
| Personal Property We Do Not Cover | 8 |
| Personal Property Losses We Cover | 9 |
| Personal Property Losses We Do Not Cover | 10 |
| **COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT** | **10** |
| **ADDITIONAL PROPERTY COVERAGES** | **11** |
| **PROPERTY CONDITIONS** | |
| Deductible | 14 |
| Your Duties | 14 |
| Loss Settlement | 15 |
| **SECTION II — LIABILITY COVERAGES** | |
| **COVERAGE E — PERSONAL LIABILITY AND COVERAGE F — MEDICAL PAYMENTS TO OTHERS** | |
| Liability Losses We Cover | 18 |
| Liability Losses We Do Not Cover | 19 |
| **ADDITIONAL LIABILITY COVERAGES** | **23** |
| **LIABILITY CONDITIONS** | **24** |
| **SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS** | |
| Policy Period and Changes | 26 |
| Concealment or Fraud | 26 |
| Liberalization Clause | 26 |
| Cancellation | 26 |
| Non-Renewal | 27 |
| Assignment | 27 |
| Our Right to Recover Payment | 27 |
| Death | 27 |

***** REPRINTED FROM THE FORMS LIBRARY *****

****REPRINTED FROM THE FORMS LIBRARY ****

# INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay your premiums when due, comply with all applicable provisions outlined in this policy, and inform us of any change in title, use, or occupancy of the **residence premises**.

This policy applies only to losses occurring during the policy period.

# POLICY DEFINITIONS

1.  Throughout this policy, "you" and "your" refer to:

    a.  the "named insured" shown in your Policy Declarations; and

    if a resident of the same household:

    b.  the spouse;

    c.  the civil partner by civil union licensed and certified by the state; or

    d.  the **domestic partner.**

2.  "We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations.

3.  In addition, certain words and phrases are defined as follows:

    a.  **"Actual cash value"**

        (1)  When damage to property is economically repairable, **actual cash value** shall mean the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

        (2)  When damage to property is not economically repairable or loss prevents repair, **actual cash value** shall mean the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

        (3)  Otherwise, **actual cash value** shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

    b.  **"Bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

    c.  **"Business"** means a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation, except for the following:

        (1)  One or more activities, not described in **(2)** below, for which no **insured** receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; and

        (2)  **volunteer** activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

    d.  **"Domestic partner"** means a person living as a continuing partner with you and:

        (1)  is at least 18 years of age and competent to contract;

        (2)  is not a relative; and

        (3)  shares with you the responsibility for each other's welfare, evidence of which includes:

            (a)  the sharing in domestic responsibilities for the maintenance of the household; or

            (b)  having joint financial obligations, resources or assets; or

            (c)  one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

            **Domestic partner** does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named **insured.**

e.   **"Earthquake"** means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

f.   **"Fungi"** means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or by-products produced, released by or arising out of **fungi,** including growth, proliferation or spread of **fungi** or the current or past presence of **fungi.** However, this definition does not include any **fungi** intended by the **insured** for consumption.

g.   **"Insured"** means:

   **(1)** you; and

   **(2)** so long as you remain a resident of the **residence premises,** the following residents of the **residence premises:**

      **(a)** your relatives;

      **(b)** any other person under the age of 24 who is in the care of any person described in **(1)** or **(2)(a)** above.

   Anyone described above who is a student temporarily residing away from your **residence premises** while attending school shall be considered a resident of your **residence premises.**

   Under **Section II — Liability Coverage,** "**insured**" also means:

   **(3)** with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **g.(2)(a)** or **(b)**. A person or organization using or having custody of these animals or watercraft in the course of any **business,** or without permission of the owner is not an **insured;**

   **(4)** with respect to any vehicle to which this policy applies:

      **(a)** any person while engaged in your employment or the employment of any person included in **g.(2)(a)** or **(b); or**

      **(b)** any other person using the vehicle on an **insured location** with any **insured's** permission.

h.   **"Insured location"** means:

   **(1)** the **residence premises;**

   **(2)** that part of any other premises, other structures and grounds, used by you as a residence and which is shown in your Policy Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

   **(3)** any premises not owned by you which you have the right or privilege to use arising out of **h.(1)** or **h.(2)** above;

   **(4)** any part of a premises not owned by any **insured** but where any **insured** is temporarily residing;

   **(5)** vacant land, including that which is vacant except for a fence, owned by or rented to any **insured** other than farmland;

   **(6)** land owned by or rented to any **insured** on which a one, two, three or four family dwelling is being constructed as a residence for any **insured;**

   **(7)** individual or family cemetery plots or burial vaults of any **insured;** or

   **(8)** any part of a premises occasionally rented to any **insured** for other than **business** purposes.

i.   **"Occurrence"** means an accident, including exposure to conditions which results in:

   **(1)** **bodily injury;** or

   **(2)** **property damage;**

   during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence.**

j.   **"Personal Watercraft"** means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

**k.**    ***"Pollutants or contaminants"*** means any of the following:

    **(1)**    liquid fuels;

    **(2)**    lead or any materials containing lead;

    **(3)**    asbestos or any materials containing asbestos;

    **(4)**    radon;

    **(5)**    formaldehyde or any materials containing formaldehyde;

    **(6)**    electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

    **(7)**    carbon monoxide;

    **(8)**    pathogenic or poisonous biological materials;

    **(9)**    acids, alkalis or chemicals;

    **(10)**    radioactive substances; or

    **(11)**    any other irritant or contaminant, including waste, vapor, fumes or odors.

**l.**    ***"Property damage"*** means physical damage to or destruction of tangible property, including loss of use of this property.

**m.**    ***"Replacement cost"***

    **(1)**    In case of loss or damage to buildings, ***replacement cost*** means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

    **(2)**    In case of loss to personal property, ***replacement cost*** means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, ***replacement cost*** shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

**n.**    ***"Residence employee"*** means an employee of any ***insured*** who performs duties in connection with the maintenance or use of the ***residence premises,*** including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the ***business*** of any ***insured.***

**o.**    ***"Residence premises"*** means:

    **(1)**    the one, two, three or four family dwelling, used principally as a private residence;

    **(2)**    other structures and grounds; or

    **(3)**    that part of any other building;

where you reside and which is shown in your Policy Declarations.

**p.**    ***"Roof Surfacing"*** means shingles or tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and roof flashing. This includes all materials and labor used in securing the roof surface and all materials applied to or under the roof surface for moisture protection.

**q.**    ***"Salvage"*** means property having value and included in a covered loss.

**r.**    ***"Volunteer"*** means an ***insured*** employed by an organization for a charitable purpose or in direct service to the general public or the community.

    ***Volunteer*** service does not include the ***insured's*** primary employment. ***Volunteer*** Service includes, but is not limited to, service performed for churches, schools, hospitals, and charitable, arts and civic organizations.

\*\*\*\* REPRINTED FROM THE FORMS LIBRARY \*\*\*\*

## SECTION I —    PROPERTY COVERAGES

**BUILDING PROPERTY WE COVER**

**COVERAGE A —    DWELLING**

We cover:

**1.**  the dwelling on the *residence premises* shown in your Policy Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways;

**2.**  attached carpeting, built-in appliances, fixtures; and

**3.**  materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises.*

**COVERAGE B —    OTHER STRUCTURES**

We cover:

**1.**  fences, driveways and walkways; and

**2.**  other structures on the *residence premises,* separated from the dwelling by clear space. This includes retaining walls, decorative or privacy walls and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

**BUILDING PROPERTY WE DO NOT COVER**

**1.**  Land, no matter where it is located, including land on which the dwelling is located, except as noted in **Additional Property Coverages, Land Stabilization.**

**2.**  Other structures:

    **a.**  used in whole or in part for *business;* or

    **b.**  rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private residence or garage.

---

**BUILDING PROPERTY LOSSES WE COVER**

We cover accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded.

---

**BUILDING PROPERTY LOSSES WE DO NOT COVER**

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1.**  Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired. This provision does not apply if you have used reasonable care to:

    **a.**  maintain heat in the building; or

    **b.**  shut off the water supply and drain the system and appliances of water.

**2.**  Freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, retaining wall, decorative or privacy wall, bulkhead, pier, wharf or dock.

**3.**  Theft in, to or from a dwelling under construction, including materials and supplies for use in the construction, until or unless the dwelling is occupied. A dwelling under construction includes being newly built, remodeled, reconstructed, renovated or repaired. This exclusion does not apply if you are occupying the dwelling as your primary residence at the time of the loss.

**4.** Vandalism and malicious mischief, including fire caused by arson, or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling under construction, including being newly built, remodeled, reconstructed, renovated or repaired is not considered vacant.

**5.** Continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of more than 14 days.

**6.** **a.** Wear and tear, marring, scratching, deterioration;

    **b.** inherent defect, mechanical breakdown;

    **c.** smog, rust or other corrosion, or electrolysis;

    **d.** smoke from agricultural smudging or industrial operations;

    **e.** settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

    **f.** birds, vermin, rodents, insects or domestic animals, except for breakage of glass;

    **g.** pressure from or presence of plant roots.

However, we do insure for any resulting loss from items **1.** through **6.** unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this Section. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

**7.** **Pollution or Contamination,** meaning the existence of or the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants or contaminants* at any time except as provided by **Additional Property Coverages — Household Products Coverage** under **Section I —   Property Coverages.**

**8.** **Ordinance or Law,** meaning any ordinance or law:

    **a.** requiring or regulating the construction, remodeling, renovation, repair, or demolition of building property, including removal of resulting debris, unless specifically provided under this policy;

    **b.** the requirements of which result in a loss in value to property; or

    **c.** requiring any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants or contaminants.*

    This exclusion applies whether or not the building property has been physically damaged.

**9.** **Earth Movement,** meaning:

    **a.** the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake,* landslide, mudflow, mudslide, sinkhole, subsidence, movement resulting from improper compaction, site selection or any other external forces, erosion including collapse or subsidence of land along a body of water as a result of erosion or undermining resulting from the action of water. This includes the channeling of a river or stream;

    **b.** erosion, shifting or displacement of materials supporting the foundation; and

    **c.** volcanic blast, volcanic explosion, shockwave, lava flow, lahars and fallout of volcanic particulate matter.

    This exclusion applies whether the earth movement is caused by or resulting from human or animal forces or any act of nature.

    We do cover direct loss by fire, explosion or theft.

**10.** **Water Damage,** meaning:

    **a.** **(1)** flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, storm surge or spray from any of these, whether or not driven by wind, including hurricane or similar storm; or

        **(2)** release of water held by a dam, levee, dike or by a water or flood control device or structure;

    **b.** water below the surface of the ground, including that which exerts pressure on, or seeps or leaks through a building, wall, bulkhead, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

**c.** water which escapes or overflows from sewers or drains located off the ***residence premises;***

**d.** water which escapes or overflows from drains or related plumbing appliances on the ***residence premises.*** However, this exclusion does not apply to overflow and escape caused by malfunction on the ***residence premises,*** or obstruction on the ***residence premises,*** of a drain or plumbing appliance on the ***residence premises;*** or

**e.** water which escapes or overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove water which is drained from the foundation area.

Water includes any water borne materials.

This exclusion applies whether the water damage is caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**11.** **Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the ***residence premises.*** If any **Building Property Losses We Cover** ensues on the ***residence premises,*** we will pay only for the ensuing loss.

**12.** **Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

**13.** Loss caused directly or indirectly by war, including the following and any consequence of any of the following:

**a.** undeclared war, civil war, insurrection, rebellion, or revolution;

**b.** warlike act by a military force or military personnel; or

**c.** destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**14.** **Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

**15.** **Intentional Loss,** meaning any loss arising out of any act committed:

**a.** by or at the direction of any ***insured;***

**b.** with the intent to cause a loss.

This exclusion does not apply to an otherwise covered property loss if the property loss is caused by an act of domestic abuse by another ***insured*** under the policy provided:

**c.** the ***insured*** claiming a property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse; and

**d.** the ***insured*** claiming a property loss did not cooperate in or contribute to the creation of the property loss.

Payment pursuant to this provision shall be limited to the insurable interest in the property of the ***insured*** claiming a property loss, less payments made pursuant to **Section I — Property Conditions, Mortgage Clause.**

**e.** For purposes of this provision, "domestic abuse" means:

**(1)** physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members;

**(2)** sexual assault of one family or household member by another;

**(3)** stalking of one family or household member by another family or household member; or

**(4)** intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

**16.** **Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

**17.** **Weather** that contributes in any way with a cause or event not covered in this section to produce a loss. However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

18. **Planning, Construction or Maintenance,** meaning faulty, inadequate or defective:

   a. planning, zoning, development, surveying, siting;

   b. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   c. materials used in repair, construction, renovation or remodeling; or

   d. maintenance;

   of property whether on or off the **insured location** by any person or organization. However, any ensuing loss not excluded is covered.

19. **Fungi, Wet or Dry Rot, or Bacteria** meaning the presence, growth, proliferation or spread of **fungi,** wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for under **Additional Property Coverages — Fungi,** Wet or Dry Rot, or Bacteria in **Section I — Property Coverages.**

20. **Collapse,** except as provided under **Additional Property Coverages — Collapse** in **Section I — Property Coverages.** However, any ensuing loss caused by a covered peril and not otherwise excluded is covered.

---

## PERSONAL PROPERTY WE COVER

### COVERAGE C — PERSONAL PROPERTY

1. Personal property owned or used by any **insured** is covered while it is anywhere in the world. When personal property is usually located at an **insured's** residence, other than the **residence premises,** coverage is limited to 10% of the Coverage C limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

   During the time the **residence premises** is under construction by or for the **insured,** our limit of liability for personal property other than on the **residence premises** shall be equal to the amount specified for Coverage **C.** Our total limit shall not exceed the policy limit for Coverage **C** in any one loss.

2. At your request we cover:

   a. personal property owned by others while the property is on that part of the **residence premises** occupied exclusively by any **insured;**

   b. personal property owned by a guest or a **residence employee,** while the property is at any residence occupied by any **insured.**

3. **SPECIAL LIMITS FOR PERSONAL PROPERTY**

   The following groups of personal property are covered only up to the special limit shown on your Policy Declarations page. The special limit is the total amount available for each group for any one loss and does not increase the Coverage C limit. The loss of, or damage to, more than one item in a group arising from the same cause or event is considered one loss.

   a. Money, pre-paid cards or passes, monetary value carried on electronic chip or magnetic cards, bank notes, bullion, gold other than goldware, silver other than silverware and platinum.

   b. Rare coins and currency, medals, stamps, trading cards and comic books, including any of these that are part of a collection.

   c. Securities, debit cards, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets, personal documents, and records or data.

      The dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

      The limit includes the cost to research, replace or restore the material from the lost or damaged medium.

   d. Watercraft, including their trailers, furnishings, equipment and outboard motors.

   e. Trailers not used with watercraft.

   f. Theft of jewelry, watches, furs, precious and semiprecious stones.

   g. Theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

Silverware, goldware and pewterware include:

**(1)** plateware, flatware, holloware, tea sets, trays, trophies and the like;

**(2)** other utilitarian items made of or including silver or gold; and

**(3)** all items of pewterware.

**h.** ***Business*** property, not excluded elsewhere, while located on the ***residence premises.*** Up to $1,000 of the limit on your Policy Declarations may be used for ***business*** property, not excluded elsewhere, while located off the ***residence premises.***

**i.** Tapes, records, discs or other media in a motor vehicle or other motorized land conveyance on or away from the ***residence premises.***

**j.** Theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

**k.** Grave markers.

---

## PERSONAL PROPERTY WE DO NOT COVER

**1.** Articles separately described and specifically insured, regardless of insured limit, in this or any other insurance.

**2.** Animals, birds or fish.

**3.** Motorized land vehicles including their equipment, parts and accessories while in or upon the vehicle.

However, we do cover:

**a.** motorized land vehicles used solely to service a residence and not subject to motor vehicle registration or licensed for road use;

**b.** vehicles designed for the handicapped and not licensed for road use;

**c.** up to $500 for disassembled parts of a motorized land vehicle while located on the ***residence premises;*** or

**d.** up to $500 for electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour.

**4.** Electronic apparatus, including their accessories and antennas, designed to be operated solely by power from the electrical system of a motor vehicle. This exclusion applies only while such property is in or upon a motor vehicle.

**5.** Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**6.** Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

**7.** Property of roomers, boarders, tenants and other residents not related to any ***insured.***

**8.** Property in a location on the ***residence premises,*** when the location is rented or held for rental to others by any ***insured*** for more than 31 days in a calendar year. This exclusion does not apply to property of an ***insured*** in a sleeping room rented to others by an ***insured*** on the ***residence premises.***

**9.** Property, away from the ***residence premises,*** rented or held for rental to others.

**10.** ***Business*** property or merchandise:

**a.** in storage;

**b.** held as a sample; or

**c.** held for sale or delivery after sale.

**11.** ***Business*** documents, records or data regardless of the medium on which they exist. However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

***** REPRINTED FROM THE FORMS LIBRARY ****

**PERSONAL PROPERTY LOSSES WE COVER**

We cover accidental direct physical loss to property described in **Coverage C — Personal Property** caused by a peril listed below except as limited or excluded.

1.  **Fire or lightning.**

2.  **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a building with:

    a.  continuous walls on all sides extending from ground level to the roof;

    b.  doors and windows in the walls at various locations; and

    c.  a continuous roof sheltering all areas within the wall perimeter.

3.  **Explosion.**

4.  **Riot or civil commotion.**

5.  **Aircraft,** including self-propelled missiles and spacecraft.

6.  **Vehicles,** meaning impact by, or with, or upset of, a vehicle.

7.  **Smoke,** meaning sudden and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations, including slash burns.

8.  **Vandalism or malicious mischief.**

9.  **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

    This peril does not include loss caused by theft:

    a.  committed by any **insured** or by any other person regularly residing on the **insured location;**

    b.  in, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

    c.  from that part of a **residence premises** rented by any **insured** to other than an **insured.**

    This peril does not include loss caused by theft that occurs away from the **residence premises** of property while at any other residence owned, rented to, or occupied by any **insured,** except while an **insured** is temporarily residing there.

    Property of a student who is an **insured** is covered while at a residence away from home.

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

    This peril does not include loss:

    a.  to the appliance or system from which the water or steam escaped;

    b.  caused by or resulting from freezing except as provided in the peril of freezing below; or

    c.  on the **residence premises** caused by accidental discharge or overflow which occurs off the **residence premises.**

    For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

***** REPRINTED FROM THE FORMS LIBRARY *****

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the *residence premises* while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired, unless you have used reasonable care to:

**a.** maintain heat in the building; or

**b.** shut off the water supply and drain the system and appliances of water.

For purposes of coverage under this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden and accidental damage from artificially generated electrical current.**

16. **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the *residence premises.* There is no coverage if breakage of glass is caused by *earthquake.* There is no coverage for loss or damage to the glass.

---

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover.** Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

---

## COVERAGE D — ADDITIONAL LIVING EXPENSE AND LOSS OF RENT

1. If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense,** meaning the necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

Payment shall be for the shortest time required, not exceeding 24 months, to repair or replace the damage or to permanently relocate.

2. If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover your loss of rent, meaning the rental income to you from that part of the *residence premises* you rent to others at the time of the loss, less any expenses that do not continue while the premises is uninhabitable.

This coverage does not apply to:

**a.** The *residence premises* or that part of the *insured location* that is not rented or leased to a tenant at the time of the loss; or

**b.** to any increase in rent or lease payment that occurs after the time of the loss.

Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 24 months.

3. If a civil authority prohibits you from use of the *residence premises* as a result of direct damage to neighboring premises by a cause of loss we cover in this policy we cover the **Additional Living Expense** as provided under **1.,** above for no more than two weeks during which use is prohibited.

The total limit of liability available for **Additional Living Expense** and **Loss of Rent** is stated on your Policy Declarations page and is the most we will pay for all loss or costs under **1., 2.** and **3.,** above.

The periods of time under **1., 2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

**ADDITIONAL PROPERTY COVERAGES**

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

1.  **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

    We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the **residence premises,** provided the trees damage **Building Property We Cover.** The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2.  **Reasonable Repairs.** We will pay up to the amount stated in your Policy Declarations for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

3.  **Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the **residence premises,** for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism or Malicious mischief and Theft.

    We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

4.  **Fire Department Service Charge.** We will pay, up to the amount stated in your Policy Declarations, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

    We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5.  **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6.  **Land Stabilization.** We will pay up to the amount stated in your Policy Declarations for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

7.  **Building Ordinance or Law Coverage.** We will pay for damage to **Building Property We Cover** resulting from a covered cause of loss in compliance with any ordinance or law that regulates the construction, repair or demolition of the property.

    This coverage does not apply unless you choose to repair or rebuild your property at its present location.

    We do not cover:

    a.  the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

    b.  the costs to comply with any ordinance which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants or contaminants.** However, for purposes of **Building Ordinance or Law Coverage, pollutants or contaminants** shall not include asbestos or materials containing asbestos or lead.

    You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

    The limit of liability shown in your Policy Declarations is the most we will pay for the total of all loss or costs for **Building Property We Cover,** regardless of the number of locations or number of claims made.

***** REPRINTED FROM THE FORMS LIBRARY *****

This is an additional amount of insurance.

8. **Arson Reward.** We will pay up to the amount stated in your Policy Declarations for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable.

However, we will not pay more than the amount stated in your Policy Declarations per event regardless of the number of persons providing information.

9. **Household Products Coverage.** We cover direct physical loss to the property described in Coverages **A** and **B** arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products on the *residence premises.* Household products include items currently in use or your possession at the *residence premises* in normal household quantities such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

We will pay up to 5% of the Coverage A limit of liability stated in your Policy Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to:

a. any fee, assessment or expense of any governmental authority;

b. loss arising out of household products possessed or used:

    (1) for *business* purposes;

    (2) for illegal purposes;

    (3) by contractors; or

    (4) on driveways or walkways.

**Pollution or Contamination** under **Section I — Building Property Losses We Do Not Cover** does not apply to this **Additional Property Coverage.**

In the event that a loss is covered under both this coverage and **Additional Property Coverages — Building Ordinance or Law Coverage,** you may elect either one of these coverages, but not both.

10. *Fungi,* **Wet or Dry Rot, or Bacteria.** We will pay up to the amount stated in your Policy Declarations for:

a. the direct physical loss to covered property caused by *fungi,* wet or dry rot, or bacteria;

b. the cost to remove *fungi,* wet or dry rot, or bacteria from covered property;

c. the cost to tear out and replace any part of the building or other covered property as needed to gain access to the *fungi,* wet or dry rot, or bacteria;

d. the cost of any testing of air or property to confirm the absence, presence or level of *fungi,* wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *fungi,* wet or dry rot, or bacteria; and

e. **Coverage D — Additional Living Expense and Loss Of Rent.**

This coverage, **10.** *Fungi,* **Wet or Dry Rot, or Bacteria,** only applies when such loss or costs:

f. are a result of a loss we cover that occurs during the policy period;

g. are not excluded under **Building Property Losses We Do Not Cover;** and

h. only if all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to trees, shrubs, or other plants.

The limit of liability stated in your Policy Declarations for *Fungi,* **Wet or Dry Rot, or Bacteria** is the most we will pay for the total of all loss or costs for Coverages **A, B, C** and **D,** and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

11. **Collapse.**

   a.   With respect to this coverage collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose:

   (1)   A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   (2)   A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

   (3)   A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

   b.   We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

   (1)   The perils under **Personal Property Losses We Cover;**

   (2)   Decay that is hidden from view, unless the presence of such decay is known to an *insured* prior to collapse;

   (3)   Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an *insured* prior to collapse;

   (4)   Weight of contents, equipment, animals or people;

   (5)   Weight of rain which collects on a roof; or

   (6)   Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   c.   Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under **b.(2)** through **(6)** above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

   This coverage does not increase the limit of liability that applies to the damaged covered property.

12. **Volunteer America**

   We insure for all risks of accidental and direct physical loss to the property described in **Coverage C — Personal Property,** when the loss occurs as a direct result of acting as a *volunteer.* No deductible applies to this coverage.

13. **Criminal Conviction Reward.**

   a.   We will pay the amount stated in your Policy Declarations to an eligible person for information leading to the arrest and conviction of the person(s) committing a crime resulting in loss to covered property; and

   b.   We will pay up to the amount stated in your Policy Declarations to an eligible person for the return of stolen covered property, when the loss is caused by theft. However, we will pay no more than the lesser of the following amounts:

   (1)   *actual cash value* of the stolen property at the time the property is returned, but not more than the amount that would have been required to repair or replace; or

   (2)   the amount determined by the loss settlement procedure applicable to the property returned had the property not been recovered.

   c.   This coverage applies subject to the following conditions:

   (1)   An eligible person means that person identified by a law enforcement agency as being the first to provide the necessary information or return the stolen property, and who is not:

   (a)   an *insured;*

   (b)   a relative of an *insured;*

   (c)   an employee of a law enforcement agency;

   (d)   an employee of a *business* engaged in property protection;

   (e)   any person who had custody of the property at the time the theft was committed; or

**(f)** any person involved in the crime.

**(2)** No reward will be paid unless and until the person(s) committing the crime is (are) convicted or the property returned. The amount of the reward in items **a.** and **b.** above is the most we will pay for any one loss to an eligible person.

---

# SECTION I — PROPERTY CONDITIONS

1. **Deductible.** In case of loss under **Section I — Property Coverages** of this policy, we cover only that part of the loss over the applicable deductible stated in your Policy Declarations.

   The deductible does not apply to **Coverage D — Additional Living Expense And Loss Of Rent** or **Fire Department Service Charge.**

2. **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling, other structures and personal property. To assist you with this responsibility, we will suggest annual changes to your policy limits. These suggestions will be made effective on the renewal of your policy and will be based on information provided to us by you or your agent about your dwelling's features and may be supplemented by public record or inspection. Labor and material cost trends for your area supplied to us by recognized residential construction cost specialists will be included. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

3. **An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

   **a.** cooperate with us in the investigation, settlement or defense of any claim or suit;

   **b.** give immediate notice to us or our agent. With respect to loss caused by the peril of Windstorm or Hail, the notice must be within 365 days after the date of the loss;

   **c.** notify the police in case of loss by theft;

   **d.** protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

   **e.** prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, **replacement cost** and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

   **f.** as often as we reasonably require:

   **(1)** exhibit the damaged and undamaged property;

   **(2)** provide us with records and documents we request and permit us to make copies; and

   **(3)** submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse, civil or **domestic partner,** or any other **insured.** You shall not interfere with us examining any other **insured.**

   **g.** submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   **(1)** the time and cause of loss;

   **(2)** interest of the **insured** and all others in the property involved and all encumbrances on the property;

   **(3)** other insurance which may cover the loss;

   **(4)** changes in title or occupancy of the property during the term of the policy;

   **(5)** specifications of any damaged building and detailed repair estimates;

   **(6)** an inventory of damaged personal property described in **3.e.;**

   **(7)** receipts for **Additional Living Expenses** incurred or records supporting the **Loss of Rent.**

4. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   **a.** for more than the amount of the **insured's** interest at the time of loss; or

   **b.** for more than the applicable limit of liability,

\*\*\*\* REPRINTED FROM THE FORMS LIBRARY \*\*\*\*

whichever is less.

5. **Loss Settlement.** Covered property losses are settled as follows:

   a. **Replacement Cost.** Property under Coverage A or B, including fences, at **replacement cost,** but not including those items listed in **b.(2), b.(3),** and **c.** below, subject to the following:

      **(1)** We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

         **(a)** the limit of liability under the policy applying to Coverage A or B;

         **(b)** the **replacement cost** of that part of the damaged building or fence for equivalent construction and use on the same premises as determined shortly following the loss;

         **(c)** the full amount actually and necessarily incurred to repair or replace the damaged building or fence as determined shortly following the loss;

         **(d)** the direct financial loss you incur; or

         **(e)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

      **(2)** When more than one layer of siding or roofing exists for **Building Property We Cover,** we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

      When more than one layer of finished flooring exists we will pay for the finish of only one layer.

      **(3)** If the cost to repair or replace is $2,500 or more, we will pay the difference between **actual cash value** and **replacement cost** only when the damaged or destroyed property is repaired or replaced.

      **(4)** You may disregard the **replacement cost** loss settlement provisions and make claim under this policy for loss or damage to buildings on an **actual cash value** basis but not exceeding the smallest of the following amounts:

         **(a)** the applicable limit of liability;

         **(b)** the direct financial loss you incur; or

         **(c)** our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

      You may still make claim on a **replacement cost** basis by notifying us of your intent to do so within 180 days after the date of loss.

   b. **Actual Cash Value.**

      **(1)** Personal property covered under Coverage C;

      **(2)** Wood fences, outdoor antennae and awnings, all whether attached or not to buildings; and

      **(3)** Structures that are not buildings under Coverage B, except driveways, walkways and other structures connected to the building by only a fence, utility line, plumbing or similar connection;

      at **actual cash value** at the time of loss not exceeding the amount necessary to repair or replace.

   c. **Windstorm or Hail Roof Surfacing Loss Percentage**

      **Roof surfacing** losses caused by the peril of windstorm or hail will be paid at the percentage shown in the Roof Surfacing Loss Percentage Table below.

      **Roof Surfacing Loss Percentage Table**

| Age | Asphalt | Metal | Other | Slate | Tile | Wood |
|-----|---------|-------|-------|-------|------|------|
| 0 | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |
| 1 | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |
| 2 | 94.0% | 97.3% | 93.8% | 97.3% | 96.0% | 95.0% |
| 3 | 91.0% | 96.0% | 90.7% | 96.0% | 94.0% | 92.5% |

| | | | | | | |
|---|---|---|---|---|---|---|
| **4** | 88.0% | 94.7% | 87.6% | 94.7% | 92.0% | 90.0% |
| **5** | 85.0% | 93.4% | 84.5% | 93.4% | 90.0% | 87.5% |
| **6** | 82.0% | 92.0% | 81.4% | 92.0% | 88.0% | 85.0% |
| **7** | 79.0% | 90.7% | 78.3% | 90.7% | 86.0% | 82.5% |
| **8** | 76.0% | 89.4% | 75.2% | 89.4% | 84.0% | 80.0% |
| **9** | 73.0% | 88.0% | 72.1% | 88.0% | 82.0% | 77.5% |
| **10** | 70.0% | 86.7% | 69.1% | 86.7% | 80.0% | 75.0% |
| **11** | 67.0% | 85.4% | 66.0% | 85.4% | 78.0% | 72.5% |
| **12** | 64.0% | 84.0% | 62.9% | 84.0% | 76.0% | 70.0% |
| **13** | 61.0% | 82.7% | 59.8% | 82.7% | 74.0% | 67.5% |
| **14** | 58.0% | 81.4% | 56.7% | 81.4% | 72.0% | 65.0% |
| **15** | 55.0% | 80.1% | 53.6% | 80.1% | 70.0% | 62.5% |
| **16** | 52.0% | 78.7% | 50.5% | 78.7% | 68.0% | 60.0% |
| **17** | 49.0% | 77.4% | 47.4% | 77.4% | 66.0% | 57.5% |
| **18** | 46.0% | 76.1% | 44.3% | 76.1% | 64.0% | 55.0% |
| **19** | 43.0% | 74.7% | 41.2% | 74.7% | 62.0% | 52.5% |
| **20** | 40.0% | 73.4% | 38.1% | 73.4% | 60.0% | 50.0% |
| **21** | 37.0% | 72.1% | 35.0% | 72.1% | 58.0% | 47.5% |
| **22** | 34.0% | 70.7% | 31.9% | 70.7% | 56.0% | 45.0% |
| **23** | 31.0% | 69.4% | 28.8% | 69.4% | 54.0% | 42.5% |
| **24** | 28.0% | 68.1% | 25.7% | 68.1% | 52.0% | 40.0% |
| **25** | 25.0% | 66.8% | 25.0% | 66.8% | 50.0% | 37.5% |
| **26** | 25.0% | 65.4% | 25.0% | 65.4% | 48.0% | 35.0% |
| **27** | 25.0% | 64.1% | 25.0% | 64.1% | 46.0% | 32.5% |
| **28** | 25.0% | 62.8% | 25.0% | 62.8% | 44.0% | 30.0% |
| **29** | 25.0% | 61.4% | 25.0% | 61.4% | 42.0% | 27.5% |
| **30 or more** | 25.0% | 60.1% | 25.0% | 60.1% | 40.0% | 25.0% |

For *roof surfacing* losses adjusted at ages 0 — 1 in the Roof Surfacing Loss Percentage table, all provisions under **5. Loss Settlement**, item **a.** apply.

**d.** We will not pay for the cost to replace and/or match any undamaged siding, *roof surfacing* and/or windows due to any mismatch between the existing undamaged siding, *roof surfacing* and/or windows on a covered dwelling or other structure and any new materials used to repair or replace the damaged siding, roof and/or windows on a covered dwelling or other structure because of:

**(1)** wear and tear, marring, scratching or deterioration;

**(2)** fading, weathering, oxidizing or color;

**(3)** texture or dimensional differences;

**(4)** obsolescence or unavailability of materials; or

**(5)** inherent vice, latent defect, mechanical breakdown.

**e.** We will not pay for any loss in value of property, whether actual or perceived, or any;

  **(1)** adverse impact on the ownership of, or transfer of ownership or title of property; or

  **(2)** adverse impact on the acquisition of financing resulting from the covered physical damage to the property.

6. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   **a.** repair or replace any part to restore the pair or set to its value before the loss; or

   **b.** pay the difference between *actual cash value* of the pair or set before and after the loss.

7. **Appraisal**. If you and we do not agree on the amount of the loss, including the amount of **actual cash value** or **replacement cost**, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company after notice of hearing to the non-requesting party by certified mail, such umpire shall be selected by a judge of a court of record in the county in which the property covered is located. The appraisers shall then appraise the loss, stating separately the **actual cash value** or **replacement cost** of each item, and failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

   Each party will:

   **a.** pay its own appraiser; and

   **b.** bear the other expenses of the appraisal and umpire equally.

   In no event will an appraisal be used for the purpose of interpreting any policy provision, determining causation or determining whether any item or loss is covered under this policy. If there is an appraisal, we still retain the right to deny the claim.

8. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

    **a.** we reach agreement with you;

    **b.** there is an entry of a final judgment; or

    **c.** there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by any *insured.*

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    **a.** notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    **b.** pays any premium due under this policy on demand if you have neglected to pay the premium;

    **c.** submits assigned, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

    **d.** complies with item **3.e.** of **Section I — Property Conditions.**

    Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is canceled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    **e.** we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

***** REPRINTED FROM THE FORMS LIBRARY *****

    **f.**   at our option, we shall receive full or partial assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt as our payment, including any accrued interest, as it bears to the amount of the principal on the mortgage.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13.**  **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**14.**  **Other Insurance and Service Agreements.** If a loss covered by this policy is also covered by:

    **a.**   other insurance, we will pay only the proportion of the loss caused by a peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of insurance covering the loss; or

    **b.**   a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement includes a service plan, property restoration plan or warranty, even if it is characterized as insurance.

**15.**  **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**16.**  **Salvage Value.** Any value that may be realized from *salvage* will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to *salvage.*

---

## SECTION II —   LIABILITY COVERAGES

---

**LIABILITY LOSSES WE COVER**

**COVERAGE E —   PERSONAL LIABILITY**

If a claim is made or a suit is brought against any insured for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

**1.**  pay up to our limit of liability for the damages for which the *insured* is legally liable; and

**2.**  provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

**COVERAGE F —   MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury.* Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees.* As to others, this coverage applies only:

**1.**  to a person on the *insured location* with the permission of any *insured;* or

**2.**  to a person off the *insured location,* if the *bodily injury:*

    **a.**   arises out of a condition on the *insured location* or the ways immediately adjoining;

    **b.**   is caused by the activities of any *insured;*

    **c.**   is caused by a *residence employee* in the course of the *residence employee's* employment by any *insured;* or

    **d.**   is caused by an animal owned by or in the care of any *insured.*

**** REPRINTED FROM THE FORMS LIBRARY ****

**LIABILITY LOSSES WE DO NOT COVER**

1. **Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

    a. which is expected or intended by any **insured** or which is the foreseeable result of an act or omission intended by any **insured;**

    This exclusion applies even if:

    (1) such **bodily injury** or **property damage** is of a different kind or degree than expected or intended; or

    (2) such **bodily injury** or **property damage** is sustained by a different person, or persons, than expected or intended.

    This exclusion does not apply to **bodily injury** resulting from the use of reasonable force by any **insured** to protect persons or property.

    b. which results from violation of criminal law committed by, or with the knowledge or consent of any **insured.**

    This exclusion applies whether or not any **insured** is charged or convicted of a violation of criminal law, or local or municipal ordinance.

    c. arising out of **business** pursuits of any **insured.**

    This exclusion does not apply to:

    (1) activities which are ordinarily incident to non-**business** pursuits;

    (2) the occasional or part-time **business** pursuits of any **insured** who is under 23 years of age;

    (3) the rental or holding for rental of an **insured location:**

    (a) on an occasional basis for the exclusive use as a residence;

    (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

    (c) in part, as an office, school, studio or private garage;

    d. arising out of the rendering or failing to render professional services;

    e. arising out of any premises owned or rented to any **insured** which is not an **insured location;**

    f. arising out of the ownership, maintenance, use, loading or unloading of:

    (1) aircraft.

    This does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

    (2) motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any **insured.**

    This exclusion does not apply to:

    (a) a trailer not towed by or carried on a motorized land vehicle;

    (b) a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

    i. not owned by any **insured;** or

    ii. owned by any **insured,** while on an **insured location;**

    (c) a motorized golf cart which is owned by an **insured,** designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and at the time of an **occurrence** is within the legal boundaries of:

    i. a golfing facility and is parked or stored there, or being used by an **insured** to:

    (i) play the game of golf or for other recreational or leisure activity allowed by the facility;

**** REPRINTED FROM THE FORMS LIBRARY ****

      **(ii)**  travel to or from an area where motor vehicles or golf carts are parked or stored; or

      **(iii)**  cross public roads at designated points to access other parts of the golfing facility; or

  **ii.**  a private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an ***insured's*** residence.

**(d)**  a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of a residence**,** which is:

  **i.**  not designed for travel on public roads; and

  **ii.**  not subject to motor vehicle registration, licensing or permits; or

**(e)**  electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

**(f)**  a motorized land vehicle in dead storage on an ***insured location.***

**(3)**  watercraft:

**(a)**  owned by or rented to any ***insured*** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

**(b)**  owned by or rented to any ***insured*** if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

**(c)**  powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any ***insured.***

However, outboard motors of 50 or more total horsepower are covered for the policy period if:

  **i.**  you acquired them prior to the policy inception, and:

      **(i)**  declared them at policy inception; or

      **(ii)**  you ask us in writing to insure them within 45 days after you become the owner;

  **ii.**  you acquire them during the policy period, provided you ask us to insure them:

      **(i)**  during the policy period in which you become the owner; or

      **(ii)**  within 45 days after you become the owner;

    whichever is greater, and pay any resulting additional premium from the date acquired.

**(d)**  designed as an air boat, air cushion, or similar type of craft; or

**(e)**  owned by any ***insured*** which is a **personal watercraft.**

This exclusion does not apply while the watercraft is stored.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

Exclusions **e.** and **f.** do not apply to ***bodily injury*** to a ***residence employee*** arising out of and in the course of the ***residence employee's*** employment by any ***insured;***

**g.**  arising out of:

**(1)**  the entrustment by any insured to any person;

**(2)**  the supervision by any insured of any person;

**(3)**  any act, decision or omission by any insured;

**(4)**  any liability statutorily imposed on any insured; or

**(5)**  any liability assumed through an unwritten or written agreement by any insured;

with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section II of this policy.

**h.** caused directly or indirectly by war, including the following and any consequences of the following:

    **(1)** undeclared war, civil war, insurrection, rebellion, or revolution;

    **(2)** warlike act by a military force or military personnel; or

    **(3)** destruction or seizure or use for a military purpose.

    Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

**i.** which results from the legal liability of any *insured* because of home care services, day care or any hospice related activity provided to any person on a regular basis by or at the direction of:

    **(1)** any insured;

    **(2)** any employee of any insured;

    **(3)** any other person actually or apparently acting on behalf of any insured.

    Regular basis means more than 20 hours per week. This exclusion does not apply to:

    **(1)** home care services provided to the relatives of any *insured;*

    **(2)** occasional or part-time home care services provided by any *insured* under 23 years of age.

**j.** which arises out of the transmission of a communicable disease by any *insured;*

**k.** arising out of physical or mental abuse, sexual molestation or sexual harassment.

**l.** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.

    However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

**m.** arising out of any *insured's* participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

**2.** **Coverage E — Personal Liability** does not apply to:

  **a.** Liability:

    **(1)** for any assessment charged against you as a member of an association of property owners except as provided under **Additional Liability Coverages — Loss Assessment Coverage** in **Section II — Liability Coverages;**

    **(2)** under any contract or agreement. However, this does not apply to written contracts:

      **(a)** that directly relate to the ownership, maintenance or use of an *insured location;* or

      **(b)** where the liability of others is assumed by the *insured* prior to an *occurrence;*

      unless excluded in **2.a.(1)** above or elsewhere in this policy;

    **(3)** liability arising out of any written or oral agreement for the sale or transfer of real property, including but not limited to liability for:

      **(a)** known or unknown property or structural defects;

      **(b)** known or hidden defects in the plumbing, heating, air conditioning or electrical systems;

      **(c)** known or unknown soil conditions or drainage problems; or

      **(d)** concealment or misrepresentation of any known defects.

  **b.** *property damage* to property owned by any *insured;*

  **c.** *property damage* to property rented to, occupied or used by or in the care of any *insured.* This exclusion does not apply to *property damage* caused by fire, smoke, explosion or water;

**d.** *bodily injury* to any person eligible to receive any benefits required to be provided or voluntarily provided by any *insured* under:

**(1)** any workers compensation;

**(2)** non-occupational disability; or

**(3)** occupational disease law;

**e.** *bodily injury* or *property damage* for which any *insured* under this policy is also an *insured* under a nuclear energy liability policy or would be an *insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

**f.** *bodily injury* to an *insured* within the meaning of parts **(1)** or **(2)** of **Policy Definitions, 3.g. Insured;**

**g.** *bodily injury* or *property damage* arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants or contaminants* at any time. This includes any loss, cost or expense arising out of any:

**(1)** request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants or contaminants;*

**(2)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants or contaminants;*

This exclusion does not apply to *bodily injury* sustained within a building on the *residence premises* and caused by, smoke, fumes, including carbon monoxide, vapor or soot from equipment used to heat that building.

**h.** liability arising from any transmission, upload or download, whether intentional or not, of computer code, programs or data;

**i.** liability arising out of any animal that any *insured* acquires, owns or keeps that:

**(1)** is of a breed or kind named by or controlled by any local, state, or federal ordinance or law because of public safety concerns;

**(2)** has previously inflicted injury upon any person resulting in:

**(a)** maiming, disfigurement, mutilation, impairment, disability or death; or

**(b)** loss of work, schooling, or a loss of ability to carry on with a normal routine;

**(3)** has been trained to fight or attack;

**(4)** has been trained to kill;

**(5)** is a wild canine or feral dog or an offspring from breeding with a wild canine;

**(6)** is illegal to acquire, own or keep;

**(7)** is wild by birth or by nature and the species is not customarily domesticated;

**(8)** is a bird of prey;

**(9)** is venomous; or

**(10)** is a primate.

Item **(3)** above does not apply in the event the animal is reacting to protect people or property from imminent harm.

This exclusion does not apply to any person or organization described as an *insured* in **Policy Definitions,** item **g.(3).**

**3.** **Coverage F — Medical Payments to Others** does not apply to *bodily injury:*

**a.** to a *residence employee* if the *bodily injury* occurs off the *insured location* and does not arise out of or in the course of the *residence employee's* employment by an *insured;*

**b.** to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation; non-occupational disability, or occupational disease law;

**c.** from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

**d.** to any person, other than a *residence employee* of any *insured,* regularly residing on any part of the *insured location.*

## ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

**1.** **Claim Expenses.** We pay:

    **a.** expenses we incur and costs taxed against any *insured* in any suit we defend;

    **b.** premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E — Personal Liability.** We are not obligated to apply for or furnish any bond; and

    **c.** reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit.

**2.** **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *insured.*

**3.** **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $500 per *occurrence* for *property damage* to property of others caused by any *insured.*

We will not pay for *property damage:*

    **a.** if insurance is otherwise provided in this policy;

    **b.** caused intentionally by any *insured* who is 13 years of age or older;

    **c.** to property owned by or rented to any *insured,* a tenant of any *insured,* or a resident in your household; or

    **d.** arising out of:

        **(1)** *business* pursuits;

        **(2)** any act or omission in connection with a premises owned, rented or controlled by an *insured,* other than the *insured location;* or

        **(3)** the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles. This does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured.*

**4.** **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to the limit shown on your Policy Declarations page for:

    **a.** the legal obligation of an *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

    **b.** loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

    **c.** loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

    **d.** loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of *business* pursuits or dishonesty of any *insured.*

Defense:

    **a.** We may make any investigation and settle any claim or suit that we decide is appropriate.

**b.** If a suit is brought against any *insured* for liability covered under this Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

**c.** We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

**5. Statutorily Imposed Vicarious Parental Liability.**

We will pay the lesser of:

**a.** the statutorily imposed limit; or

**b.** $3,000;

for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

This coverage is excess over any other valid and collectible insurance.

**6. Loss Assessment.**

**a.** we will pay loss assessments charged during the policy period against you by the association of property owners up to the limit of liability stated in your Policy Declarations, when the assessment is made as a result of:

**(1)** each direct loss to property, caused by a peril that would be covered under **Section I — Property Coverages** of this policy;

**SPECIAL EXCLUSION:** There is no coverage for any loss assessment resulting from the peril of *earthquake.* However, loss assessment for ensuing direct loss by fire, explosion or theft is covered.

**(2)** each *occurrence* to which **Section II —  Liability Coverages** of this policy would apply; and

**(3)** liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

**(a)** the director, officer or trustee is elected by the members of the association of property owners; and

**(b)** the director, officer or trustee serves without deriving any income from the exercise of his/her duties, which are solely on behalf of the association of property owners.

**b. DEDUCTIBLE.** We will pay only that part of your assessment per unit for property insured under Section I that exceeds $500. No other deductible applies to this coverage. If our liability for a loss results from Section I and coverage under this option, only the larger deductible will apply.

**7. Volunteer America.**

**a.** Under **Section II —  Liability Coverages** the following applies:

**(1) Property Damage to Others.** We will pay an additional $2,000 for direct damage caused as direct result of acting as a *volunteer.*

**(2) Medical Payments to Others.** We will pay up to double the amount stated in your Policy Declarations for *bodily injury* caused as a direct result of acting as a *volunteer.*

**b.** Under **Section II —  Liability Losses We Do Not Cover** the following items are modified as follows:

**(1)** Item **1.c.** does not apply to activities as a *volunteer.*

**(2)** Item **1.d.** does not apply to professional services, other than professional health care services by a doctor, performed as a *volunteer.*

---

## SECTION II —   LIABILITY CONDITIONS

---

**1. Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage E stated in your Policy Declarations. This limit is the same regardless of the number of *insureds,* claims made or persons injured.

Our total liability under Coverage F for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage F stated in your Policy Declarations.

**\*\*\*\* REPRINTED FROM THE FORMS LIBRARY \*\*\*\***

2. **Severability of Insurance.** This insurance applies separately to each *insured.* This condition shall not increase our limit of liability for any one *occurrence.*

3. **Your Duties After Loss.** In case of an accident or *occurrence,* the *insured* shall perform the following duties that apply:

   **a.**  give written notice to us or our agent as soon as practicable, which sets forth:

      **(1)**  the identity of the policy and *insured;*

      **(2)**  reasonably available information on the time, place and circumstances of the accident or *occurrence;*

      **(3)**  names and addresses of any claimants and witnesses; and

      **(4)**  in case of loss under the **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money** also notify the credit card or fund transfer card company;

   **b.**  promptly forward to us every notice, demand, summons or other process relating to the accident or *occurrence;*

   **c.**  at our request, help us:

      **(1)**  to make a settlement;

      **(2)**  to enforce any right of contribution or indemnity against any person or organization who may be liable to any *insured;*

      **(3)**  with the conduct of suits and attend hearings and trials;

      **(4)**  to secure and give evidence and obtain the attendance of witnesses;

   **d.**  under the **Additional Liability Coverages —   Damage to the Property of Others** —   submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the *insured's* control;

   **e.**  submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages, Credit Card, Fund Transfer Card, Forgery and Counterfeit Money Coverage,** stating the amount and cause of loss;

   **f.**  the **insured** shall not, except at the *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury.*

4. **Duties of an Injured Person —   Coverage F —   Medical Payments to Others.** The injured person or someone acting for the injured person will:

   **a.**  give us written proof of claim, under oath if required, as soon as practical;

   **b.**  authorize us to obtain copies of medical reports and records.

   The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

5. **Payment of Claim —   Coverage F —   Medical Payments to Others.** Payment under this coverage is not an admission of liability by any *insured* or us.

6. **Payment of Interest —   Coverage E —   Personal Liability.**

   If a notice, demand, summons, judgment, or other process is promptly forwarded to us as required by **Liability Condition 3.b.** under **Your Duties After Loss** and we accept the defense or agree to the judgment, we will pay interest on the judgment, subject to all of the following:

   **a.**  We will pay the interest on that part of the judgment that is covered by this policy and that does not exceed our applicable limit of liability.

   **b.**  We will pay interest that accrues on the judgment until we pay, tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

   **c.**  If we appeal the judgment, we will pay interest on the entire judgment.

   **d.**  Post-judgment interest is in addition to the applicable limit of liability.

   **e.**  Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

7. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

***** REPRINTED FROM THE FORMS LIBRARY *****

No one shall have any right to join us as a party to any action against any *insured.* Further, no action with respect to Coverage **E** shall be brought against us until the obligation of the *insured* has been determined by final judgment or agreement signed by us.

8.  **Bankruptcy of an Insured.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

9.  **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

---

1.  **Policy Period and Changes.**

    a.  The effective time of this policy is 12:01 A.M. at the *residence premises.* This policy applies only to loss under Section I, or *bodily injury* or *property damage* under Section II, which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

    b.  Changes:

        (1) Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

        (2) This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

2.  **Concealment or Fraud.** This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct at the time application was made or any time during the policy period.

    We may void this policy or deny coverage for a loss *occurrence* if you or an *insured* have intentionally concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

    We may void this policy or deny coverage because of fraud or material misrepresentation even after a loss or *occurrence*. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so, you must reimburse us for any payments we may have already made.

3.  **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

    This liberalization clause does not apply to changes implemented that involve a broadening and a restriction of coverage or an increase in premium.

4.  **Cancellation.**

    a.  You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

    b.  We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in your Policy Declarations. Proof of mailing shall be sufficient proof of notice.

        (1) When you have not paid the premium we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

        (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

***** REPRINTED FROM THE FORMS LIBRARY *****

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 15 days before the date cancellation takes effect.

c. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 20 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

6. **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

7. **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

Subrogation does not apply under Section II to **Coverage F — Medical Payments to Others** or **Additional Liability Coverages, Damage to Property of Others.**

8. **Death.** If you die:

a. we insure your legal representative, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

b. *insured* shall include:

(1) any member of the household who is an *insured* at the time of your death, but only while a resident of the *residence premises;* and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**** REPRINTED FROM THE FORMS LIBRARY ****

# SPECIAL PROVISIONS — ALABAMA

## POLICY DEFINITIONS

Item **3.a.** is deleted and replaced by the following:

**a.** **"Actual cash value"**

    **(1)** When damage to property is economically repairable, **actual cash value** means the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration, and obsolescence.

    **(2)** When damage to property is not economically repairable or loss prevents repair, **actual cash value** means the market value of new, identical, or nearly identical property, less reasonable deduction for wear and tear, deterioration, and obsolescence.

    **(3)** Otherwise, **actual cash value** means the market value of property in a used condition equal to that of the lost or damaged property, if reasonably available on the used market.

Item **3.c.** is deleted and replaced by the following:

**c.** **"Business"** means:

    **(1)** a trade, profession, or occupation engaged in on a full-time, part-time, or occasional basis;

    **(2)** any other activity engaged in for money or other compensation, except the following:

        **(a)** one or more activities, not described in **(b)** below, for which no **insured** receives more than $5,000 in total compensation for the 12 months before the beginning of the policy period; or

        **(b)** **volunteer** activities for which no money or other compensation is received other than for expenses incurred to perform the activity; or

    **(3)** a **short-term rental**.

The following is added to existing **POLICY DEFINITIONS,** item **3.**:

**a.** **"Short-term rental"** means one or more rentals, in whole or in part, of the **residence premises** solely for use as a private residence. **Short-term rental** includes any other related property or services made available and/or provided by an **insured**.

    **Short-term rental** does not include:

    **(1)** rental, in whole or in part, of the **residence premises** for a single rental period to the same individual(s) for more than 180 consecutive days;

    **(2)** rental, in part, of the **residence premises** to a tenant, roomer, or boarder for a period of 6 months or more; or

    **(3)** property or services provided by another party.

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY LOSSES WE DO NOT COVER

The following are added to existing **BUILDING PROPERTY LOSSES WE DO NOT COVER**:

**21.** Theft or vandalism and malicious mischief in, to, or from a dwelling or other structure while rented to others by any **insured**, in whole or in part, as a **short-term rental**.

**22.** **Cosmetic loss or damage**, meaning any loss that is limited to the physical appearance of a metal roof surface.

    Metal roof means all metal roofing materials on a metal roofing system. For purposes of this exclusion, metal roof does not include the coverings of bay or bow windows. This exclusion does not apply when the roof overlay is a material other than metal.

***** REPRINTED FROM THE FORMS LIBRARY *****

This exclusion does not apply to policies endorsed with **HOM-7220**, **Optimum™ Homeowners Coverage**.

## PERSONAL PROPERTY WE COVER

### COVERAGE C —   PERSONAL PROPERTY

The following is added to item **2.**:

However, we will not cover personal property owned by tenants or guests if the tenants or guests have compensated the **insured** to use the **residence premises**, in whole or in part.

### PERSONAL PROPERTY WE DO NOT COVER

Under **3.**, items **c.** and **d.** are deleted and replaced by the following:

    **c.** up to $500 for disassembled parts of a motorized land vehicle while located on the **residence premises**;

    d. up to $500 for electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour; or

Under **3.**, the following is added:

    **e.** up to $3,000 for electric bikes, scooters, hoverboards, or other similar electric or battery powered vehicles designed, manufactured, and/or altered to be operated for speeds up to 28 miles per hour.

Item **8.** is deleted and replaced by the following:

**8.** Property in a location on the **residence premises** when the location is rented to others by any **insured**.

### PERSONAL PROPERTY LOSSES WE COVER

Under **8. Vandalism or malicious mischief**, the following is added:

This peril does not include loss to property caused by vandalism or malicious mischief that arises out of a **short-term rental**.

Under **9. Theft**, items **b.** and **c.** are deleted and replaced by the following:

    **b.** in, to, or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

    **c.** from that part of a **residence premises** rented by any **insured** to other than an **insured**; or

Under **9. Theft**, the following is added:

    **d.** from any part of the **residence premises** by any person using the premises as part of a **short-term rental**.

### COVERAGE D —   ADDITIONAL LIVING EXPENSE AND LOSS OF RENT

The second paragraph of item **1.** is deleted and replaced by the following:

Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

Items **2.a.** and **2.b.** are deleted and replaced by the following:

    **a.** the **residence premises** or that part of the **insured location** that is not rented or leased to a tenant at the time of the loss;

    **b.** to any increase in rent or lease payment that occurs after the time of the loss; or

The following is added to item **2.**:

    **c.** a **short-term rental**.

The last paragraph of item **2.** is deleted and replaced by the following:

Payment shall be for the shortest time required to repair or replace the damage.

**ADDITIONAL PROPERTY COVERAGES**

The following is added to existing **ADDITIONAL PROPERTY COVERAGES**:

1. **Mortgage Acquisition Expense Coverage.** In the event of a total loss of the dwelling shown in your Policy Declarations by a covered cause of loss, we will pay necessary expenses and fees toward the acquisition of a new first mortgage to repair or replace the insured dwelling, up to a maximum of $5,000.

   No deductible applies to this coverage.

   This is an additional amount of insurance.

## SECTION I — PROPERTY CONDITIONS

Under **5. Loss Settlement**, item **e.(2)** is deleted and replaced by the following:

   (2) adverse impact on the acquisition of financing resulting from the covered physical damage to the property. If **Mortgage Acquisition Expense Coverage** is provided under **Additional Property Coverages**, the application of this provision **(2)** does not apply to the extent coverage is provided for **Mortgage Acquisition Expense**.

Item **8.** is deleted and replaced by the following:

8. **Suit Against Us**.

   No legal action can be brought against us unless:

   a. there has been full compliance with all of the terms of this contract; and

   b. the action is brought within the time limitations prescribed under Alabama law.

## SECTION II — LIABILITY COVERAGES

**LIABILITY LOSSES WE DO NOT COVER**

Item **1.c.(3)** is deleted and replaced by the following:

   (3) the rental or holding for rental of any part of the *residence premises*:

      (a) in part, when rented to fewer than three roomers or boarders; or

      (b) in part, as an office, school, studio, or private garage;

Under **1.f.(2)**, items **(e)** and **(f)** are deleted and replaced by the following:

      (e) electric motorized ride-on vehicles designed to be operated by children under the age of eight and designed for speeds of less than six miles per hour;

      (f) a motorized land vehicle in dead storage on an *insured location*; or

The following is added **1.f.(2)**:

      (g) electric bikes, scooters, hoverboards, or other similar electric or battery powered vehicles designed, manufactured, and/or altered to be operated for speeds up to 28 miles per hour.

**ADDITIONAL LIABILITY COVERAGES**

Under **3. Damage to Property of Others**, item **c.** is deleted and replaced by the following:

   c. to property owned by or rented to:

   (1) any *insured*; or

   (2) a tenant of any *insured* or a resident in your household; or

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

Item **5.** is deleted and replaced by the following:

5. **Non-Renewal**. We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in your Policy Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

**** REPRINTED FROM THE FORMS LIBRARY ****

Item **7.** is deleted and replaced by the following:

7. **Our Right to Recover Payment**. An ***insured*** may waive in writing before a loss all rights of recovery against any person. However, this waiver does not apply if an ***insured*** is an innocent victim of domestic abuse as defined in the "Domestic Abuse Insurance Protection Act" In this case, we shall be subrogated to the right of the innocent ***insured*** claimant to recover for any losses we paid for property damages.

In all other cases, if an ***insured*** has not waived in writing before a loss all rights of recovery against any person, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an ***insured*** must sign and deliver all related papers and cooperate with us.

The following is added to existing **SECTIONS I AND II —   PROPERTY AND LIABILITY CONDITIONS**

1. **Additional Policy Protection.** If one or more of our programs apply to you, you will be eligible to receive benefits specific to that program. The benefits enhance the safety, value, usability, life, or protection of you or your insurable assets. These benefits include, but are not limited to, reduced deductibles, devices, equipment, services, or other benefits provided by either us or a business partner.

All other provisions of this policy apply.